OPINION
{¶ 1} This matter comes before us upon Stefani M. King's appeal from the trial court's December 26, 2007 order overruling her motion for appointment of counsel to assist her in challenging her reclassification as a "Tier II" sex offender.
 {¶ 2} The record reflects that King pleaded guilty to unlawful sexual conduct with a minor in 1997. She served five years of community control and completed ten years of registration as a sexually oriented offender. In December 2007, she received a letter from the Ohio Attorney General's office advising her of additional requirements being imposed on her under R.C. 2950.031, which was enacted in Senate Bill 10, effective January 1, 2008. Under S.B. 10, King automatically is reclassified as a "Tier II" offender based solely on the offense she committed. She also is required to register as a sex offender every six months for an additional fifteen years.
 {¶ 3} As permitted under R.C. 2950.031(E), King filed a petition in the trial court for a hearing to challenge her reclassification as a Tier II offender and the accompanying registration requirements. She also filed an affidavit of indigence and a two-page motion for the appointment of counsel to assist with her petition. The trial court summarily overruled the motion on December 26, 2007. This timely appeal followed.
 {¶ 4} In her sole assignment of error, King contends the trial court erred in overruling her motion for the appointment of counsel. King asserts that she has a Sixth Amendment right to counsel because reclassification as a Tier II offender constitutes "the imposition of a new criminal penalty[.]" She also reasons that reclassification is a continuation of her original felony sentencing, which was a critical stage of the criminal proceedings. Finally, King argues that even if reclassification is civil and non-punitive, she *Page 3 
has a right to counsel because S.B. 10 infringes on a liberty interest.[1]
 {¶ 5} To establish a constitutional right to counsel, King first seeks to show that S.B. 10, unlike prior versions of Ohio law, imposes criminal punishment. She contends S.B. 10 fundamentally changes Ohio's sex offender classification and notification provisions by altering the frequency and duration of reporting, by increasing the amount of information offenders are required to disclose, and by placing offenders into one of three tiers based solely on the offense of conviction without any consideration of their individual likelihood of re-offending. Based on the premise that S.B. 10 is criminal and punitive in both purpose and effect, King insists that she has a Sixth Amendment right to counsel to assist her in challenging her reclassification.
 {¶ 6} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Ohio Supreme Court held that the registration and notification requirements in R.C. Chapter 2950 are non-punitive in purpose and effect. Id. at 414-423. Thereafter, in State v. Williams, 88 Ohio St.3d 513,2000-Ohio-428, the court reaffirmed its view that R.C. Chapter 2950 is "neither `criminal,' nor a statute that inflicts punishment[.]" Id. at 528. More recently, in State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, the court again concluded that "sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature[.]" Id. at 389. Wilson produced a three-member dissent opining that the restrictions imposed under R.C. Chapter 2950 have become more onerous since Cook and should be viewed as *Page 4 
"part of the punishment that is imposed as a result of the offender's actions." Id. at 392.
 {¶ 7} In the present case, King asserts that the registration and notification scheme in S.B. 10 is punitive, entitling her to appointed counsel to challenge her reclassification. She advances several arguments in support. First, she contends the text and location of the legislation in the Revised Code reflect a punitive intent. In particular, she notes that the statute directly ties a person's classification level to the offense committed. She also parses the legislation in a semantic argument. She notes that S.B. 10 provides for an offender's classification level to be included in his or her "sentence." King then points out that a "sentence" consists of a sanction or combination of sanctions. Finally, she notes that a "sanction" has been defined as any penalty imposed as punishment for an offense. Therefore, she argues that classification under S.B. 10 is punitive. She also stresses that S.B. 10 is codified in the "penalties and sentencing" portion of the Revised Code and that a criminal penalty exists for failure to comply with the legislation's requirements.
 {¶ 8} In a second line of attack, King asserts that "legislative history" reflects a punitive intent behind S.B. 10. In reality, she attempts to infer such intent from the language of the legislation itself. Unlike prior versions of R.C. Chapter 2950, which required an individualized judicial assessment of recidivism risk, King points out that an offender's personal likelihood of re-offending is irrelevant under S.B. 10. An offender's classification as a Tier I, II, or III offender, and the accompanying reporting and notification requirements, are linked directly to the crime committed. Therefore, King argues that some people who previously were found unlikely to re-offend are being reclassified and forced to register longer and to face community notification under S.B. 10. Insofar as S.B. 10 requires longer registration or community notification for people previously found unlikely *Page 5 
to re-offend, King argues that it should be considered punitive.
 {¶ 9} In a third line of attack, King argues that the effect of S.B. 10 is punitive. In particular, she contends the legislation imposes an affirmative disability or restraint insofar as it mandates longer, more frequent reporting and requires offenders to provide more information when reporting. She also asserts that S.B. 10 is analogous to historical "shaming" punishments insofar as it provides for widespread dissemination of personal information about offenders, reclassifies many lower-risk offenders into Tiers II and III, which misleads the public into believing they are dangerous when, in fact, courts already have determined that they are not. She additionally argues that S.B. 10 furthers traditional aims of punishment, i.e., retribution and deterrence, by reclassifying lower-risk offenders into higher tiers and requiring more lengthy and onerous reporting and by providing for widespread dissemination of personal information via the internet and postcards. King also claims S.B. 10 is not rationally related to a non-punitive purpose. She contends it arguably provides less community protection than the old scheme, which was based on a judicial determination of dangerousness. Finally, King contends S.B. 10 is excessive in relation to its alleged non-punitive purpose of community protection. This is so, she argues, because many offenders previously found to be low risks now must register every ninety days for life.
 {¶ 10} At the outset of our analysis, we note that King, a Tier II offender under S.B. 10, is not subject to the legislation's community notification provisions, which are reserved for Tier III offenders. Therefore, for present purposes, we need not decide whether S.B. 10's community notification provisions are punitive. The narrower issue before us is whether King's reclassification and the corresponding registration requirements are *Page 6 
punitive in purpose or effect.
 {¶ 11} Having reviewed S.B. 10, we do not find a legislative intent to impose punishment through the reclassification and registration process. As with prior versions of R.C. Chapter 2950, we believe the legislature intended to enact a civil, regulatory scheme rather than to impose criminal punishment. The new law includes a declaration about the risk of recidivism posed by sex offenders. R.C. 2950.02(A). It also contains a declaration that its various requirements are intended to protect the safety and welfare of the population. R.C. 2950.02(B). The General Assembly further declared that the release or exchange of information about sex offenders is not punitive. Id. We note too that S.B. 10 grants King a right to a hearing to contest her reclassification, but the legislation fails to provide her with a right to appointed counsel. It also states that the hearing shall be governed by the Ohio Rules of Civil Procedure. These facts bolster our belief that the legislature intended a civil, non-punitive proceeding. Smith v. Doe (2003),538 U.S. 84, 96.
 {¶ 12} In reaching the foregoing conclusion, we do not deny the relevance of King's arguments about the phrasing of the new legislation, its placement in the criminal code, and the imposition of criminal sanctions for failure to comply. These attributes of S.B. 10 are probative of legislative intent, but they are not dispositive. Id. at 94-96. Moreover, King's attempt to divine punitive intent from the absence of any individualized risk assessment under S.B. 10 is unavailing. As noted above, the new legislation automatically places offenders into one of three tiers based solely on the offense of conviction and imposes corresponding registration requirements. InSmith, supra, the United States Supreme Court recognized that a legislature may take such a categorical approach without transforming a regulatory scheme into a punitive one. Id. at 104 ("The State's *Page 7 
determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment[.]"). In the final analysis, and after considering the legislation as a whole, we are persuaded that the General Assembly through S.B. 10 once again intended to enact a civil, regulatory scheme.
 {¶ 13} A more difficult issue is whether S.B. 10 is so punitive in effect as to negate the legislature's non-punitive intent. Despite finding ourselves sympathetic to much of King's argument on this point, and notwithstanding our agreement with the views expressed by the three dissenters in Wilson, we cannot ignore the precedent set by the Ohio Supreme Court in Cook and later reaffirmed in Williams andWilson. Although S.B. 10 alters the landscape, we still do not find, in light of the foregoing cases and the United States Supreme Court's opinion in Smith, that the reclassification and registration requirements at issue have a punitive effect negating the General Assembly's intent to establish a civil, regulatory scheme. InCook, the Ohio Supreme Court required "the clearest proof" to demonstrate "that a statute has a punitive effect so as to negate a declared remedial intention." Cook, 83 Ohio St.3d at 418.
 {¶ 14} In support of her argument, King addresses five of seven factors applied in Smith and other cases to determine whether a sex-offender registration law has a punitive effect. These factors include: (1) whether it imposes an affirmative disability or restraint; (2) whether it is analogous to a historical form of punishment; (3) whether it promotes the traditional aims of punishment; (4) whether it is rationally related to a non-punitive purpose; and (5) whether it is excessive in relation to its non-punitive purpose. Smith,538 U.S. at 1149. *Page 8 
 {¶ 15} With regard to the first factor, King argues that S.B. 10 imposes an affirmative disability or restraint because it increases the frequency and duration of her registration requirement. She notes too that it requires the disclosure of more information when registering as a sex offender and allows this information to be disseminated via the Internet. King also points out that S.B. 10 prohibits offenders from living within 1,000 feet of a school, daycare, or preschool.
 {¶ 16} In Cook, however, the court reasoned that the act of registering as a sex offender does not impose any restraint.Cook, 83 Ohio St.3d at 418. This remains true regardless of whether King is required to register once a year for ten years, as under the old law, or twice a year for twenty-five years, as S.B. 10 now requires. Although S.B. 10 also requires King to disclose a substantial amount of personal information that may be subject to dissemination over the Internet, the same was true in Wilson, as pointed out by the three-member dissent in that case, and in Smith. On this issue, we fail to see a constitutionally meaningful distinction between S.B. 10 and the version of R.C. Chapter 2950 in effect when Wilson was decided. Likewise, while S.B. 10 precludes sex offenders from living within 1,000 feet of certain facilities, a similar restriction existed when the Wilson majority declared R.C. Chapter 2950 to be non-punitive.[2] Therefore, in light of existing precedent, we do not find that S.B. 10 imposes an affirmative disability or restraint.
 {¶ 17} Concerning the second factor, King insists that S.B. 10 is analogous to historical shaming punishments. A similar argument was rejected by the Ohio Supreme *Page 9 
Court in Cook and the United States Supreme Court in Smith. TheCook court recognized that registration long has been regarded as a "valid regulatory technique[.]" Cook, 83 Ohio St.3d at 418. The court also noted that public dissemination of information about an offender traditionally has not been regarded as punishment. Id. at 419. InSmith, the majority reached the same conclusion, reasoning:
 {¶ 18} "* * * Even punishments that lacked the corporal component, such as public shaming, humiliation, and banishment, involved more than the dissemination of information. They either held the person up before his fellow citizens for face-to-face shaming or expelled him from the community. By contrast, the stigma of Alaska's Megan's Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. * * *
 {¶ 19} "The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." Smith, 538 U.S. at 98-99
(citations omitted).
 {¶ 20} King seeks to distinguish Smith in three ways. First, she contends Smith *Page 10 
involved the dissemination of information about offenders via the Internet, whereas S.B. 10 subjects Tier III offenders to disclosure of information about them through the Internet and through the mailing of postcards to neighbors and others. This distinction has no relevance in the present case, however, because King, a Tier II offender, is not subject to dissemination of information through postcards. Second, King argues that her classification as a Tier II offender will mislead the public into believing she is dangerous. Therefore, she argues that the present case, unlike Smith, does not involve the dissemination of accurate information about a criminal record. We disagree. Under S.B. 10, King is a classified as a Tier II offender based on the crime she committed. The public simply will be made aware of this fact. The new legislation makes no statement regarding her dangerousness. We are aware of no false or inaccurate information about her that will be subject to public disclosure as a result of S.B. 10. Third, King argues that S.B. 10 is a historical shaming punishment because some of the information she must disclose is non-public and not related to her criminal record. Again, we disagree. Most of the personal information King must provide when registering is already accessible by the public. Posting some of the information on the Internet merely makes a search for it easier.[3] Smith, 538 U.S. at 98-99. To the extent that some of the information addressed by King might not be otherwise available to the public, we see nothing particularly "shaming" about its disclosure. We see little risk of public humiliation, for example, resulting from disclosure of King's e-mail address, her telephone number, her internet identifiers, or where she stores her *Page 11 
automobiles.
 {¶ 21} With regard to the third factor, King asserts that S.B. 10 has a punitive effect because it promotes traditional aims of punishment such as retribution and deterrence. King insists that reclassifying her as a Tier II offender "smacks of community outrage and retribution." She also argues that S.B. 10 sends a strong deterrent message by imposing its requirements regardless of an offender's individual dangerousness.
 {¶ 22} In Cook, the court recognized that retribution is vengeance for its own sake. Cook, 83 Ohio St.3d at 420. The majority then concluded that "[t]he registration and notification provisions of R.C. Chapter 2950 do not seek vengeance for vengeance's sake, nor do they seek retribution." Id. We reach the same conclusion here. While King asserts that reclassifying a "low-risk" offender as a Tier II offender must be considered an act of retribution, we are unpersuaded. By tying an offender's classification to the offense committed rather than to an individual assessment of dangerousness, the General Assembly merely adopted an alternative approach to the regulation and categorization of sex offenders. In Smith, the United States Supreme Court expressly rejected an argument that Alaska's sex-offender registration obligations were retributive because they were based on the crime committed rather than the particular risk an offender posed. Smith, 538 U.S. at 102-104. The majority held that Alaska's approach was "reasonably related to the danger of recidivism" and "consistent with the regulatory objective." Id. at 102. With regard to deterrence, the Cook court recognized that requiring sex-offender registration might have some deterrent effect.Cook, 83 Ohio St.3d at 420. The court nevertheless concluded that any such effect was more remedial than punitive. Id. Similarly, theSmith court rejected the notion that deterrence resulting from Alaska's statute was sufficient to establish a *Page 12 
punitive effect. Smith, 538 U.S. at 102.
 {¶ 23} Concerning the fourth factor, King contends S.B. 10 has a punitive effect because it is not rationally related to a non-punitive purpose. The essence of her argument is that S.B. 10 is irrational because it disregards individual dangerousness and classifies offenders based solely on the offense committed. For example, she reasons that requiring a non-dangerous offender such as herself to register for another fifteen years as a Tier II offender dilutes the effectiveness of the entire registration scheme. Although we acknowledge the logic of King's argument about the potentially dilutive effect of S.B. 10, we do not agree that the new legislation is irrational. As noted above, S.B. 10 has a non-punitive purpose, namely protection of the public from sex offenders. The new legislation is rationally related to this non-punitive purpose because it alerts the public to the presence of sex offenders. Smith, 538 U.S. at 102-103. The fact that the General Assembly elected to categorize offenders based on the crime committed does not make S.B. 10 irrational. Id. We note too that "[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." Id. at 103.
 {¶ 24} Regarding the fifth factor, King claims S.B. 10 is excessive in relation to its non-punitive purpose. In support, she again asserts that the new legislation requires low-risk, non-dangerous offenders to register more frequently and for a longer duration. She also asserts that dissemination of information about offenders on the Internet far exceeds what is necessary to protect the public.
 {¶ 25} We reject King's argument for several reasons. First, we disagree with the premise, repeated throughout her briefs, that sexually oriented offenders under former R.C. Chapter 2950 already have been found by a court to be non-dangerous and unlikely *Page 13 
to commit future sex crimes. Under the former law, first-time sex offenders like King ordinarily were labeled by the trial court as either "sexually oriented offenders" or "sexual predators." In order to classify an offender as a sexual predator, the trial court was required to find, by clear and convincing evidence, that the offender was likely to commit another sex offense. State v. Eppinger, 91 Ohio St.3d 158,2001-Ohio-247. Absent such a finding, the default classification was as a sexually oriented offender. Therefore, an offender's designation as a sexually oriented offender did not result from any judicial determination of non-dangerousness. Instead, it resulted from the lack of an affirmative finding, by clear and convincing evidence, that the defendant was dangerous. This distinction undermines King's argument that S.B. 10 is excessive because it is being applied to offenders who have been found non-dangerous and unlikely to re-offend. Her assertion is untrue.
 {¶ 26} We note too that S.B. 10 is not excessive in relation to its non-punitive purpose because it applies to all sex offenders without regard to individual dangerousness. The Smith court expressly rejected this argument, reasoning;
 {¶ 27} "Alaska could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism. The legislature's findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. * * *
 {¶ 28} "The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld againstex post facto challenges laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment."Smith, 538 U.S. at 103-104 (citations and footnotes omitted). *Page 14 
 {¶ 29} Finally, we are unpersuaded by King's claim that dissemination of information about sex offenders on the Internet is excessive. Again, the Smith court rejected the same argument, recognizing that Internet notification was a "passive" system, that the Web site included a warning about committing crimes against sex offenders, and that Internet notification was reasonable in light of the mobility of the population and the need for easy access. Id. at 105. These same considerations guide us to the same conclusion in the present case.
 {¶ 30} Based on the reasoning set forth above, we reject King's argument that S.B. 10 is so punitive in effect that it negates the legislature's non-punitive intent. Having determined that the reclassification and registration scheme set forth in S.B. 10 is civil and non-punitive, we reject King's assertion that she has aSixth Amendment right to counsel during the hearing to challenge her reclassification as a Tier II offender. For the same reasons, we are unpersuaded that the civil reclassification hearing is a continuation of King's criminal sentencing where punishment will be imposed. Therefore, she has not established a Sixth Amendment right to counsel. See, e.g.,State v. Furlong (Feb. 6, 2001), Franklin App. No. 00AP-637 (recognizing that the Sixth Amendment right to counsel is not implicated during a civil sex-offender classification hearing).
 {¶ 31} Finally, we are unpersuaded by King's argument that even if S.B. 10 is civil and non-punitive, she has a right to counsel because the new legislation infringes on a liberty interest. "The right to be represented by counsel in a civil proceeding where the state seeks to take the defendant's life, liberty, or property is guaranteed by theFifth Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment." Roth v. Roth (1989),65 Ohio App.3d 768, 776. *Page 15 
 {¶ 32} In a supplemental brief filed after oral argument, King contends a protected liberty interest arose from her "settled expectation," under the former version of R.C. Chapter 2950, that she would be required to register as a sex offender for ten years.[4] King contends S.B. 10 deprives her of this liberty interest by obligating her to register for fifteen more years. In support, she cites Doe v. Dept.of Public Safety (2004), 92 P.3d 398. In Doe, the Alaska Supreme Court held that a defendant whose sex-offense conviction had been set aside could not be required to register as a sex offender. The court reasoned that after the set-aside order, the defendant no longer had the status of a convicted person. Id. at 408. The court further opined that the set-aside order gave rise to protected liberty interests under the Alaska Constitution that would be violated by requiring the defendant to register as a sex offender. Id. at 408-409.
 {¶ 33} Upon review, we find Doe to be distinguishable for at least two reasons. First, as the Alaska Supreme Court emphasized, it was decided based strictly on an interpretation of the Alaska Constitution. Second, the "settled expectation" at issue in Doe arose when the defendant's conviction was set aside. In the present case, King's conviction has not been set aside. That fact is significant. In Cook, the Ohio Supreme *Page 16 
Court determined that a convicted felon has no reasonable expectation that his or her criminal conduct will not be subject to future legislation. Cook, 83 Ohio St.3d at 412. For that reason, theCook court held a former version of R.C. Chapter 2950 could be applied to sex offenders who committed their crimes before the legislation took effect. Similarly, King, a convicted felon, could have no reasonable expectation that her criminal conduct would not be subject to future versions of R.C. Chapter 2950. Indeed, Cook indicates that convicted sex offenders have no reasonable "settled expectations" or vested rights concerning the registration obligations imposed on them. If the rule were otherwise, the initial version of R.C. Chapter 2950 could not have been applied retroactively in the first place. Therefore, King has failed to show the deprivation of any protected liberty interest arising from a settled expectation regarding her registration obligation.
 {¶ 34} Moreover, in State v. Hayden, 96 Ohio St.3d 211,2002-Ohio-4169, the Ohio Supreme Court held that imposing a sex-offender registration requirement on a defendant without holding a hearing did not deprive the defendant of any protected liberty interest. Id. at 214. In light of Hayden, we fail to see how granting King such a hearing, albeit without the assistance of counsel, deprives her of any protected liberty interest. Requiring a convicted sex offender to register does not implicate a constitutionally protected liberty interest. Id. at 216 (Cook, J., concurring).
 {¶ 35} Having found that King lacks a statutory or constitutional right to counsel in connection with her petition to challenge her reclassification as a Tier II offender, we overrule her assignment of error and affirm the judgment of the Miami County Common Pleas Court.
 Judgment affirmed. *Page 17 
BROGAN, J., concurs.
Copies mailed to:
James D. Bennett James R. Dicks, Jr. Stephen P. Hardwick Hon. Jeffrey M. Welbaum
[1] On its face, the present proceeding is a civil action commenced by King to challenge the Attorney General's administrative reclassification of her as a Tier II offender. Although S.B. 10 provides King with a right to a hearing, the legislation does not authorize the appointment of counsel. Therefore, King has no statutory right to counsel under S.B. 10.
[2] In Hyle v. Porter, 117 Ohio St.3d 165, 2008-Ohio-542, the court recently held that the 2003 version of R.C. 2950.031, which includes the 1,000-foot restriction, may not be applied retroactively absent a clear indication that the legislature intended retroactivity.
[3] We note that some of the information King must provide when registering as a sex offender is not subject to posting on the Internet. See R.C. 2950.13(A)(11). The disclosure of some other information is left to the discretion of the Bureau of Criminal Identification. Id. Therefore, it is not apparent that all of the personal information addressed in King's appellate brief actually will be posted on the Internet.
[4] In the trial court, King did not assert a Fifth andFourteenth Amendment right to counsel based on the deprivation of a liberty interest. Instead, she alleged only the existence of a Sixth Amendment right to counsel because the "challenged reclassification has a punitive impact[.]" (Doc. #2). Likewise, King's opening appellate brief did not discuss her Fifth and Fourteenth Amendment right to counsel arising from infringement on a protected liberty interest. She asserted only that aSixth Amendment right to counsel existed because S.B. 10 imposed criminal punishment. In her reply memorandum, however, King briefly argued that, even if S.B. 10 is civil and non-punitive, she has a right to counsel based on the deprivation of a liberty interest. King expands on this theme in a supplemental brief filed after oral argument. In its own supplemental brief, the State has addressed King's argument regarding the deprivation of a liberty interest. Therefore, we will address the issue herein.