The STATE of Ohio, Appellee,

v.

CLAY, Appellant.

[Cite as *State v. Clay,* 177 Ohio App.3d 78, 2008-Ohio-2980.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070752.

Decided June 20, 2008.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Paula Adams, Assistant Prosecuting Attorney, for appellee.

Michaela Stagnaro, for appellant.

SUNDERMANN, Judge.

{¶ 1} Defendant-appellant, Alfred A. Clay, appeals from the judgment of the Hamilton County Court of Common Pleas classifying him as a sexual predator. In 1977, Clay was convicted of the aggravated murder and rape of Vearelene Jackson. He was sentenced to death for the aggravated murder and to seven to 25 years for the rape, with the sentences to run consecutively. On appeal, this court affirmed the judgment of the trial court with the exception that Clay's sentence was reduced to life imprisonment.[1]

{¶ 2} In September 2007, while still serving time in prison, Clay was returned to Hamilton County for a sex-offender-classification hearing. At the conclusion of the hearing, the trial court found Clay to be a sexual predator. This appeal followed.

## I.  Clay's Appeal Is Not Moot

{¶ 3} Clay raises a sole assignment of error in which he contends that the evidence failed to establish his likelihood of committing future sexually oriented offenses and, thus, that his sexual-predator adjudication was contrary to the manifest weight of the evidence under former R.C. Chapter 2950. The state argues, however, that any issues related to Clay's sexual-predator classification have been rendered moot by the recent amendments to R.C. Chapter 2950, effective January 1, 2008, because Clay would automatically be classified as a Tier III Offender under the amendments. The state's argument is untenable.

### A.  Former R.C. Chapter 2950

{¶ 4} Under former R.C. Chapter 2950, to obtain a sexual-predator adjudication, the state had to prove by "clear and convincing" evidence that the offender (1) had pleaded guilty to or had been found guilty of a sexually oriented offense "that [wa]s not a registration exempt sexually-oriented offense" and (2) was

---

1.  *State v. Clay* (Apr. 4, 1979), 1st Dist. No. C–77204, 1979 WL 208628.

"likely to engage in the future in one or more sexually-oriented offenses."[2] Clear and convincing evidence has been defined as " 'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.' "[3]

{¶ 5} In determining whether an offender convicted of a sexually-oriented offense was a sexual predator, the trial court had to consider the evidence under the legislative guidelines set forth in R.C. 2950.09(B)(3). No requisite number of factors, however, had to apply before a trial court could find that an offender was a sexual predator.[4] The trial court, moreover, could place as much or as little weight on the factors as it deemed appropriate.[5] Furthermore, the trial court was not required to list the criteria, but was required only to consider all the criteria and guidelines under R.C. 2950.09(B)(3).[6] The trial court, however, had to articulate sufficient findings on the record to demonstrate an offender's likelihood of recidivism.[7]

### B. Amended R.C. Chapter 2950

{¶ 6} Am.Sub.S.B. No. 10, which became effective January 1, 2008, authorizes the Ohio Attorney General to determine the classification of each offender subject to registration under a three-tiered system.[8] Designations such as "sexual predator" no longer exist, nor do the related hearings under former R.C. 2950.09. Rather, offenders are classified by the attorney general solely on the basis of the offense for which they have been convicted.[9]

{¶ 7} Offenders, however, are automatically placed into a higher tier if (1) they have a prior conviction for a sexually oriented or child-victim-oriented offense or (2) they have been previously classified as a sexual predator.[10] For example, an

---

2. R.C. 2950.01(E)(1); see also R.C. 2950.09(B)(4).

3. *State v. Eppinger* (2001), 91 Ohio St.3d 158, 163, 743 N.E.2d 881, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118.

4. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 19; see also *State v. Thompson* (2001), 92 Ohio St.3d 584, 587–588, 752 N.E.2d 276, paragraph one of the syllabus.

5. Id.

6. *State v. Morales*, 153 Ohio App.3d 635, 2003-Ohio-4200, 795 N.E.2d 145, ¶ 8.

7. *State v. Allen*, 1st Dist. Nos. C–050010 and C–050011, 2006-Ohio-2338, 2006 WL 1302541, ¶ 51–53.

8. See R.C. 2950.031.

9. See R.C. 2950.01(E), (F), and (G).

10. See R.C. 2950.01(F)(1) through (5) and 2950.01(G)(1) through (5).

offender who has previously been labeled as a sexual predator will automatically be classified as a Tier–III offender, regardless of the sexually oriented offense that was committed.

{¶ 8} Each tier has the same registration requirements, but they differ in terms of the duration of the duty and the frequency of the in-person address verification. For example, Tier–I offenders are required to register for 15 years [11] and to verify their addresses annually.[12] Tier–II offenders are required to register for 25 years [13] and to verify their addresses every 180 days.[14] Tier–III offenders are required to register for life [15] and to verify their addresses every 90 days.[16]

{¶ 9} In addition to the registration requirements, Tier–II and Tier–III offenders are subject to community-notification requirements unless the trial court finds after a hearing that they would not have been subject to the community-notification provisions under the prior statute.[17] In making this determination, the court must consider a number of factors,[18] including the following:

{¶ 10} "(a) The offender's or delinquent child's age;

{¶ 11} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;

{¶ 12} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;

{¶ 13} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;

{¶ 14} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;

---

11. See R.C. 2950.07(B)(3).

12. See R.C. 2950.06(B)(1).

13. See R.C. 2950.07(B)(2).

14. See R.C. 2950.06(B)(2).

15. See R.C. 2950.07(B)(1).

16. See R.C. 2950.06(B)(3).

17. See R.C. 2950.11(F)(1)(a) through(c) and 2950.11(F)(2).

18. See R.C. 2950.11(F)(2)(a) through (k).

{¶ 15} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;

{¶ 16} "(g) Any mental illness or mental disability of the offender or delinquent child;

{¶ 17} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

{¶ 18} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;

{¶ 19} "(j) Whether the offender or delinquent child would have been a habitual sex offender or a habitual child victim offender under the definitions of those terms set forth in section 2950.01 of the Revised Code as that section existed prior to the effective date of this amendment;

{¶ 20} "(k) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."

{¶ 21} With the exception of factor (j), these factors are identical to the factors under former R.C. 2950.09(B)(3) that a trial court utilized to determine whether an offender should be classified as a sexual predator.

## C. Analysis

{¶ 22} Our review of former R.C. Chapter 2950 and amended R.C. Chapter 2950 reveals that, contrary to the state's assertion, Clay's appeal is not moot. Under former R.C. Chapter 2950, Clay's adjudication as a sexual predator rendered him subject to former R.C. Chapter 2950's registration and community-notification provisions.[19] Under amended R.C. Chapter 2950, Clay's rape conviction renders him by operation of law a Tier–III sex offender, subject to amended R.C. Chapter 2950's registration and community-notification provisions. But if Clay had been, as he here insists he should have been, classified under former R.C. Chapter 2950 as a sexually oriented offender, rather than a sexual predator,

---

**19.** R.C. 2950.11(F)(1)(a).

he would have been subject only to former R.C. Chapter 2950's registration provisions, and not to its community-notification provisions. Because classification under former R.C. Chapter 2950 as a sexually oriented offender would exempt a sex offender from amended R.C. Chapter 2950's community-notification provisions, Clay's contention on appeal that he should have been classified under former R.C. Chapter 2950 as a sexually oriented offender is not moot.

## II. Clay's Sexual–Predator Classification

{¶ 23} Turning now to the merits of Clay's argument on appeal, we address Clay's contention that his sexual-predator adjudication was contrary to the manifest weight of the evidence. He argues that the trial court failed to discuss on the record the particular evidence and factors it had relied upon in determining his likelihood of committing future sexually oriented offenses, in contravention of *State v. Eppinger.*[20] Instead, he contends, the trial court incorrectly stated that it was statutorily required to find him to be a sexual predator based upon the recent amendments to R.C. Chapter 2950.

### A. Clay's Sexual–Predator–Classification Hearing

{¶ 24} The trial court held a classification hearing on September 14, 2007. At that time, the trial court indicated that it had received and had reviewed materials from the clerk of court's website, records from Chillicothe Correctional Institute, statements from each of Clay's five codefendants, which had been made to the police shortly after the offenses, the indictment and the sentencing entry for the underlying offenses, and a court clinic report dated September 12, 2007. The state also introduced a photograph of the victim.

{¶ 25} The state proceeded to argue that Clay should be classified as a sexual predator based on the brutal and sexual nature of the underlying rape and murder of Vearelene Jackson. The assistant prosecuting attorney recounted in detail the multiple acts of physical torture and sexual abuse Jackson had endured for several hours at the hands of Clay and his codefendants, emphasizing the cruel nature of the offenses.

{¶ 26} Defense counsel argued that while the original crimes were brutal, Clay posed little risk of reoffending. Counsel contended that Clay had served 32 years in prison without any disciplinary problems and had worked in food service, as a porter, and as a yard worker. Counsel stated that Clay had participated in several programs at the prison, including anger-management and stress-management programs, alcohol and substance-abuse programs, and African cultural

---

20. *Eppinger*, 91 Ohio St.3d at 166, 743 N.E.2d 881.

programs, but noted that the trial court had not been given any documentation on these programs.

{¶ 27} Counsel pointed out that at the time of the rape, Clay was 26 years old, was married, and had four children. Defense counsel argued that Clay had maintained relationships with his family members during his prison term. Defense counsel further contended that Clay would be 61 on his next parole date, that he had suffered from health problems, and that he had no prior sexual convictions.

{¶ 28} With respect to the underlying offenses, defense counsel noted that there had been only one victim, that Clay had known the victim prior to the offenses, that he had no history of mental illness, that he had displayed no deviant sexual tendencies, and that he did not identify with children. Counsel further argued that Clay's MMPI-test results showed that he had concerns about social issues. While defense counsel acknowledged that Clay had placed in the moderate-to-high risk level for sexual reoffending on the Static 99 test, he argued that Clay's health problems and his advanced age further lowered his risk of reoffending.

{¶ 29} The court told defense counsel that it was troubled by Clay's failure to attend any sexual-offender programs. The court acknowledged, however, that despite Clay's rape conviction, he had never been labeled by the institution as needing such treatment. The trial court further stated that it was troubled by Clay's score of five on the Static 99 test. The court stated that it thought Clay would have scored lower on the test given his institutional history. The court then asked defense counsel about the criteria that had given Clay the score of five on the test (substance abuse, conflicts with intimate partners, general self-regulation, lifestyle instability and impulsivity, employment instability, anger problems, criminal history, and the fact that the victim was not related to Clay). The court noted that prior to Clay's incarceration, he had demonstrated antiso-cial-personality orientation and characteristics as well as a history of rule violations.

{¶ 30} The court then stated that "in gauging someone who's been away for a period of * * *30 years, and I'm looking at a report from the institution that I would just want to know what type of individual Mr. Clay has been in the institution. And according to the institution, Mr. Clay as he's been present there, he's been attending programs there, according to Mr. Clay, but the institution tells me nothing else. I'm a little bit suspicious, too whether the institution has told me everything. And now Mr. Clay says today that he has a lot of certificates. I would really like to see what those certificates are from."

{¶ 31} As a result, the trial court continued the hearing for 30 days, so that Clay could send additional information to the court on the programs he had

attended during his time in prison. The trial court also stated that it was going to contact Chillicothe Correctional Institute to see if there was any additional information missing from Clay's institutional records.

### B. Trial Court's Decision Classifying Clay as a Sexual Predator

{¶ 32} At the October 12, 2007, hearing, the trial court acknowledged that it had received additional materials from Clay. It then stated that it had been struggling with which version of R.C. 2950.09 to apply. The court stated that "as of June 1, all individuals in the institution will be classified under the new Ohio statute, automatically, by operation of law, just based on what they were convicted of. It won't matter what any other adjudication has occurred. By operation of law everyone in the state of Ohio will be put under the same umbrella. That means a rape charge will be automatically, by operation of law, set as a sexual predator. So, at this particular point in time I'm deeming Mr. Clay, based on all the evidence I have in regards to this particular case, and in reading the new legislation, as a sexual predator." That same day, the trial court journalized a judgment entry labeling Clay a sexual predator. The entry, however, was a form entry that did not contain any findings of fact pertaining to Clay's likelihood of recidivism.

### C. Trial Court's Incorrect Reliance on the New Statute

{¶ 33} Clay first contends that the trial court incorrectly relied upon recent statutory amendments to R.C. 2950.09 when classifying him as a sexual predator. Based upon our review of the record, we must agree.

{¶ 34} The trial court was under the mistaken impression that the amendments, which would have changed the manner of Clay's classification under R.C. 2950.09, were already in effect at the time of the hearing. But the portion of Am.Sub.S.B. No. 10 that would have automatically labeled Clay as a Tier–III offender did not become effective until January 1, 2008.[21]

### D. The Trial Court's Failure to Articulate Its Reasons for Labeling Clay a Sexual Predator

{¶ 35} Thus, we must determine whether the trial court made sufficient findings under former R.C. 2950.09 to justify Clay's classification as a sexual predator. Here, the trial court followed the procedures outlined in former R.C. 2950.09. It held a hearing at which it considered the evidence presented by both the state and defense counsel, including the court clinic report, and it looked at that evidence in light of the factors under former R.C. 2950.09(B)(3). The trial

---

21. See R.C. 2950.031.

court, however, never stated any reasons why Clay was likely to commit future sexually oriented offenses.

{¶ 36} In *State v. Allen*,[22] this court held that a defendant's sexual-predator classification was against the manifest weight of the evidence, where the trial court perfunctorily "stated for the record that it had considered the factors under R.C. 2950.09(B)(3) and found [that the defendant] had a previous conviction for voluntary manslaughter, and that he had displayed cruelty during the commission of the crimes. The trial court then stated that 'it is clear he's a sociopath, he has no conscience at all. * * * I find he's clearly a sexual predator.' "[23] The trial court, however, "did not state any reasons on the record regarding [the defendant's] likelihood of recidivism."[24]

{¶ 37} We acknowledged that the Ohio Supreme Court's decision in *Eppinger* "merely suggested standards for trial courts to follow in a 'model sexual offender classification hearing,' " and that "the failure of a trial court to strictly adhere to the three requirements of the 'model hearing' described in *Eppinger*, d[id] not, per se, result in reversal upon appeal."[25] We concluded, however, that because the record lacked "any reasoning as to how the trial court found the second element for its sexual predator designation—the likelihood of [the defendant's] recidivism," the trial court's classification was against the manifest weight of the evidence.[26]

{¶ 38} Here, the trial court's statement that it based Clay's sexual predator adjudication "on all the evidence I have in regards to this particular case" was insufficient to support the adjudication, particularly when this was Clay's only sexually oriented offense.[27] Because the record is inadequate to permit meaningful review of the trial court's classification of Clay as a sexual predator, we sustain his sole assignment of error, reverse his sexual-predator adjudication, and remand this case to the trial court for it to hold a new sexual-offender-classification hearing and to articulate the evidence or factors that it relies upon

---

22. *State v. Allen*, 1st Dist. Nos. C–050010 and C–050011, 2006-Ohio-2338, 2006 WL 1302541.

23. Id. at ¶ 51.

24. Id.

25. Id. at ¶ 52.

26. Id. at ¶ 52–55.

27. Id.; see also *State v. Dobrski*, 9th Dist. No. 06CA008925, 2007-Ohio-3121, 2007 WL 1805021, ¶ 12–14; *State v. Othberg*, 8th Dist. No. 83342, 2004-Ohio-6103, 2004 WL 2609610, ¶ 13–21; *State v. Jones*, 2d Dist. No. 19355, 2003-Ohio-3240, 2003 WL 21419267, ¶ 23–30; *State v. Carpenter*, 6th Dist. No. L–04–1195, 2005-Ohio-6133, 2005 WL 3078207, ¶ 14–35.

under former R.C. 2509.09 in determining Clay's likelihood of committing a sexually oriented offense in the future.

Judgment reversed
and cause remanded.

PAINTER and HENDON, JJ., concur.