SEWELL, Appellant,

v.

The STATE of Ohio, Appellee.

[Cite as *Sewell v. State*, 181 Ohio App.3d 280, 2009-Ohio-872.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080503.

Decided Feb. 27, 2009.

Ohio Justice & Policy Center, Margie Slagle, and David A. Singleton, for appellant.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and David T. Stevenson and Jerome A. Kunkel, Assistant Prosecuting Attorneys, for appellee.

SYLVIA S. HENDON, Presiding Judge.

{¶ 1} In 2007, the General Assembly enacted Am.Sub.S.B. No. 10 ("Senate Bill 10") to implement the federal Adam Walsh Child Protection and Safety Act of 2006. Senate Bill 10 amended various sections of the Ohio Revised Code, including R.C. Chapter 2950. When Senate Bill 10 is discussed in this decision, only the sections that amended former R.C. Chapter 2950 are included.

{¶ 2} Prior to Senate Bill 10, offenders who committed a sexually oriented offense that was not registration-exempt were labeled a sexually oriented offender, a habitual sexual offender, or a sexual predator based upon the crime committed and the findings made by the trial court at a sexual-offender classification hearing. Under Senate Bill 10, offenders are placed in tiers based solely on the offense committed.[1] Tier I offenders are required to register for 15 years and to verify their addresses annually.[2] Tier II offenders must register for 25 years and verify their addresses every 180 days.[3] Tier III offenders are required to register for life and to verify their addresses every 90 days.[4] Senate Bill 10 provides for the reclassification of offenders who were classified prior to its enactment based solely on the offense for which they were convicted.[5]

---

1. See *State v. Clay*, 177 Ohio App.3d 78, 2008-Ohio-2980, 893 N.E.2d 909.

2. See R.C. 2950.07(B)(3); R.C. 2950.06(B)(1).

3. See R.C. 2950.07(B)(2); R.C. 2950.06(B)(2).

4. See R.C. 2950.07(B)(1); R.C. 2950.06(B)(3).

5. See *State v. Williams*, 12th Dist. No. CA2008–02–029, 2008-Ohio-6195, 2008 WL 5052748, ¶ 17, citing *In re Smith*, 3rd Dist. No. 1–07–58, 2008-Ohio-3234, 2008 WL 2581667, ¶ 32.

{¶ 3} Petitioner-appellant Jerome Sewell Jr. was convicted of sexual battery in 1999. In a separate hearing, the trial court determined that Sewell was a sexually oriented offender. Under former R.C. Chapter 2950, Sewell was required to annually register as a sexual offender for ten years.

{¶ 4} In December 2007, Sewell received a notice from the Ohio Attorney General stating that he had been reclassified as a Tier III sex offender and that he was required to register with the local sheriff every 90 days for life. Sewell filed an R.C. 2950.11(F)(2) motion on December 19, 2007, for immediate relief from the community-notification provisions. The trial court ultimately granted Sewell's R.C. 2950.11(F)(2) motion, exempting him from community notification. On December 28, 2007, Sewell filed a complaint for declaratory judgment challenging the constitutionality of Senate Bill 10. After a hearing, the trial court overruled Sewell's constitutional challenges to Senate Bill 10. Sewell has appealed.

{¶ 5} Sewell's sole assignment of error alleges that the trial court erred in "upholding the constitutionality of Senate Bill 10." He alleges that the retroactive application of Senate Bill 10's tier-classification and registration requirements violates the prohibition on retroactive laws contained in Section 28, Article II of the Ohio Constitution, the Ohio Constitution's Due Process and Double Jeopardy Clauses, and the separation-of-powers doctrine.

{¶ 6} Statutes enacted in Ohio are presumed to be constitutional.[6] That presumption applies to amended R.C. Chapter 2950.[7] Sewell has the burden to establish beyond reasonable doubt that Senate Bill 10 is unconstitutional.[8]

## I. Retroactivity Clause of the Ohio Constitution

{¶ 7} Sewell argues that Senate Bill 10 violates Ohio's constitutional prohibition on retroactive laws.[9] Specifically, Sewell argues that Senate Bill 10 impairs Sewell's "vested right" and his "accrued substantive right" in a "final judgment limiting his registration duties to ten years" and that it imposes new burdens and duties with respect to his past offense.

---

6.  See *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110.

7.  See id. at ¶ 12, citing *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E.2d 570.

8.  See id., citing *Roosevelt Properties Co. v. Kinney* (1984), 12 Ohio St.3d 7, 12 OBR 6, 465 N.E.2d 421.

9.  Section 28, Article II, Ohio Constitution.

{¶ 8} Statutes are presumed to apply only prospectively unless expressly made retrospective.[10]   Claims of unconstitutional retroactivity are analyzed under a two-part test.[11]   First we must determine whether the legislature expressly made the statute retrospective.[12]   If the legislature intended the statute to apply retroactively, we must then determine whether the statute affects a substantive right or is remedial.[13]   If the statute affects a substantial right, it is unconstitutional.[14]

{¶ 9} R.C. 2950.03 governs when a sexual offender must be given notice of the duty to register.   R.C. 2950.03(A)(1) and (2) provide that the statute applies to sex offenders "regardless of when the person committed the sexually oriented offense."   R.C. 2950.03(A)(5) indicates that the tier classifications apply to offenders who had registered under former R.C. Chapter 2950 prior to December 1, 2007.   R.C. 2950.04 imposes a duty to register on every "offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to a sexually oriented offense," "[r]egardless of when the sexually oriented offense was committed."   R.C. 2950.031 and 2950.032 provide for the reclassification of offenders who were classified under former R.C. Chapter 2950.

{¶ 10} Based upon the foregoing statutes, we conclude that the legislature intended to apply Senate Bill 10's tier-classification and registration provisions retroactively.[15]   We must now determine whether Senate Bill 10's tier-classification and registration provisions affect a substantial right or are remedial.

{¶ 11} The Ohio Supreme Court stated in State v. Cook,[16] "A statute is 'substantive' if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations or liabilities as to a past transaction, or creates a new right.   Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing

10.   See R.C. 1.48.

11.   See State v. Ferguson, supra.

12.   See id. at ¶ 13.

13.   See id., citing State v. Consilio, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167.

14.   See id., citing Van Fossen v. Babcock & Wilcox Co. (1988), 36 Ohio St.3d 100, 522 N.E.2d 489.

15.   See State v. Williams, supra;  State v. Byers, 7th Dist. No. 07 CO 39, 2008-Ohio-5051, 2008 WL 4416519;  In re Smith, supra;  State v. Linville, 4th Dist. No. 08CA3051, 2009-Ohio-313, 2009 WL 162061.

16.   See fn. 7, supra.

right. A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even if applied retroactively. Further, while we have recognized the occasional substantive effect, we have found that it is generally true that laws that relate to procedures are ordinarily remedial in nature." [17]

{¶ 12} The defendant in *Cook* challenged the 1997 version of R.C. Chapter 2950 that had increased the frequency and duration of the previous registration requirements for sex offenders and had expanded the number of sex-offender classifications from one to three. The *Cook* court noted that "[e]xcept with regard to constitutional protections against ex post facto laws * * * felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." [18] The court held that the registration and address-verification requirements of R.C. Chapter 2950 were de minimis procedural requirements that were necessary to achieve the goals of protecting the public from sexual offenders, and that they did not violate the constitutional ban on retroactive laws. [19]

{¶ 13} In *State v. Ferguson*, [20] the Ohio Supreme Court considered the constitutionality of the 2003 amendments to former R.C. Chapter 2950, which provided that the classification of a sexual predator and the duty to register remained for life and could never be modified; that sex offenders were required to register with the sheriffs of the counties where they lived and attended school, along with the sheriffs of their residential counties; and that information provided through the sex-offender registration process was required to be included on an Internet database. As the court noted, "Ohio retroactivity analysis does not prohibit all increased burdens; it prohibits only increased punishment." [21] The *Ferguson* court held that the amendments did not violate the constitutional ban on ex post facto and retroactive laws because they were part of a remedial regulatory scheme designed to protect the public rather than to punish the offender. [22] The supreme court recognized the remedial nature of former R.C. Chapter 2950 in *State v. Williams*, [23] holding that it was "neither 'criminal,' nor a statute that

---

17. (Citations omitted.) See id.

18. See id. at 411–412, 700 N.E.2d 570, quoting *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 525 N.E.2d 805.

19. See id.

20. See fn. 6, supra.

21. See id. at ¶ 39.

22. See id. at ¶ 36.

23. (2000) 88 Ohio St.3d 513, 728 N.E.2d 342.

inflicts punishment." In *State v. Wilson*,[24] the court reaffirmed that "sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature."

{¶ 14} *Cook* indicated that a convicted sex offender has no reasonable "settled expectation" or vested right concerning the registration requirements imposed upon him.[25] The Ohio Supreme Court has consistently held that R.C. Chapter 2950 is a civil remedial statute.[26] In enacting Senate Bill 10, the legislature established a remedial regulatory scheme for the purpose of protecting the public. We hold that Senate Bill 10's tier-classification and registration provisions do not violate the constitutional ban on retroactive laws.

## II. Double Jeopardy

{¶ 15} Sewell alleges that Senate Bill 10 violates the Double Jeopardy Clause of the Ohio Constitution because even if the legislature intended the statute to be civil rather than criminal, its effect is punitive, and it therefore subjects him to multiple punishments for the same offense. Sewell argues that Senate Bill 10 has so changed the "character and effect" of former R.C. Chapter 2950 that the registration scheme is now punitive.

{¶ 16} Sewell first argues that because an offender's likelihood of committing future sex offenses is irrelevant under Senate Bill 10's offense-based tier classification system and an offender's classification is based solely on the crime committed, the statute effectively places an "additional penalty" on sex offenders that could only have been motivated by the legislature's desire to punish. The United States Supreme Court recognized in *Smith v. Doe*[27] that "a legislature may take such a categorical approach without transforming a regulatory scheme into a punitive one."[28] Further, as the Seventh Appellate District noted in *State v. Byers*,[29] the classifications under former R.C. Chapter 2950 were also partially tied to the offense because an offender who committed a sexually oriented offense that was not registration-exempt was by operation of law labeled a sexually oriented offender. In addition, the *Byers* court noted that it could not necessarily be concluded that Senate Bill 10's tiers were not tied to the threat of repeat

---

24. 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264.

25. See *State v. Desbiens*, 2nd Dist. No. 22489, 2008-Ohio-3375, 2008 WL 2627638.

26. See *State v. Ferguson*, supra, at ¶ 29.

27. (2003), 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164.

28. See *State v. King*, 2nd Dist. No. 08–CA–02, 2008-Ohio-2594, 2008 WL 2222253, at ¶ 12; see also *State v. Williams*, supra; *State v. Byers*, supra.

29. See supra at ¶ 25.

offending that sex offenders posed, because the offenders were placed in tiers based upon the severity of the offense committed, and because the tier level rose each time an offender committed another sexually oriented offense.[30]

{¶ 17} Sewell also argues that the legislature's placement of R.C. Chapter 2950 in the Criminal Code and the statute's criminalization of a sex offender's failure to comply with the registration requirements lead to the conclusion that Senate Bill 10 is punitive. But previous versions of R.C. Chapter 2950 have been placed within the Criminal Code and have criminalized the failure to register, and the Ohio Supreme Court has held that they were civil and not punitive in nature. We hold that the legislature's intent in enacting Senate Bill 10 was civil and remedial, not punitive.

{¶ 18} Sewell next argues that even if the legislature intended Senate Bill 10 to be civil rather than criminal, its effect is punitive. Only the clearest proof will be adequate to show that a declared remedial intention is negated by a statute's punitive effect.[31] In *Cook*, the Ohio Supreme Court used the guideposts set forth by the United States Supreme Court in *Kennedy v. Mendoza–Martinez*[32] to determine whether the effect of the 1997 version of R.C. Chapter 2950 was punitive. These guideposts include "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned."[33]

{¶ 19} Sewell argues that Senate Bill 10 imposes an affirmative disability or restraint because it requires more frequent registration and expands his registration requirements to each county in which he lives, works, or attends school, and because his personal information will be "widely disseminated" through the Internet. The *Cook* court found that registration and notification requirements in the 1997 version of R.C. Chapter 2950 did not impose a new disability or restraint.[34] As the Second Appellate District pointed out in *State v. King*,[35] this

---

30. See id. at ¶ 26.

31. See *State v. Cook*, supra, citing *Flemming v. Nestor* (1960), 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435.

32. (1963), 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644.

33. See *State v. Cook*, supra, citing *Kennedy v. Mendoza–Martinez*, supra.

34. See id. at 418, 700 N.E.2d 570.

is true regardless of whether a sex offender is required to register once a year for ten years or once every 90 days for life. In addition, as the *King* court stated, "Although Senate Bill 10 also requires King to disclose a substantial amount of personal information that may be subject to dissemination over the Internet, the same was true in *Wilson*, as pointed out by the three-member dissent in that case, and in *Smith*. On this issue, we fail to see a constitutionally meaningful distinction between Senate Bill 10 and the version of R.C. Chapter 2950 in effect when *Wilson* was decided." [36] We conclude that Senate Bill 10 does not impose an affirmative disability or restraint.

{¶ 20} Sewell argues that the "wide dissemination" of his personal information on the Internet resembles historical shaming punishments that were intended to inflict public disgrace. "Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment." [37] The purpose and the effect of the informational database are to inform the public to keep it safe, not to shame or humiliate the offender.[38] Public availability of a sex offender's personal information may have a "painful impact" on the offender, but the impact is a consequence of the offender's conviction, which is already a matter of public record, and not of Senate Bill 10's registration and dissemination provisions.[39] Further, the public will not, as Sewell argues, be "misled" into believing that Sewell is "dangerous" when a court has previously determined that he is not. Sewell will be classified as a Tier III offender based upon the crime he committed, and the public will have access to that information. There will be no statement made regarding Sewell's "dangerousness." [40] We hold that Senate Bill 10's dissemination provisions are not analogous to historical shaming punishments. We point out that Sewell is not subject to Senate Bill 10's community-notification provisions.

{¶ 21} Sewell next argues that Senate Bill 10 promotes retribution and deterrence, the traditional aims of punishment. In *Cook*, the court concluded that the registration and notification provisions of R.C. Chapter 2950 did not "seek retribution." [41] Rather, the provisions were remedial because they sought

---

35. See *State v. King*, supra, at ¶ 16.

36. See id.

37. See *Smith v. Doe*, supra, at 98, 123 S.Ct. 1140, 155 L.Ed.2d 164.

38. See id.

39. See id. at 101, 123 S.Ct. 1140, 155 L.Ed.2d 164.

40. See *State v. King*, supra, at ¶ 20.

41. See *State v. Cook*, supra, at 420, 700 N.E.2d 570.

to protect the public from sex offenders who might reoffend.[42]  The *Cook* court held that former R.C. Chapter 2950 did not have a deterrent effect because sex offenders were not "deterred even by the threat of incarceration." [43]  Further, "deterrence alone is insufficient to make a statute punitive." [44]  The same reasoning applies to Senate Bill 10.  Senate Bill 10 does not promote retribution and deterrence.

{¶ 22} Sewell argues that Senate Bill 10 is not rationally related to a nonpunitive purpose because it classifies sex offenders based solely on the offense committed and does not rely on determinations of individual dangerousness. Senate Bill 10's nonpunitive purpose is to protect the public from sex offenders. It is rationally related to this "non-punitive purpose because it alerts the public to the presence of sex offenders." [45]  The General Assembly's decision to categorize sex offenders based upon the crime committed rather than to require individual determinations of dangerousness does not make the statute punitive or irrational.[46]

{¶ 23} Finally, Sewell argues that Senate Bill 10 is excessive in relation to its nonpunitive purpose.  As the United States Supreme Court pointed out in *Smith v. Doe*,[47] the question is not "whether the legislature has made the best choice possible to address the problem it seeks to remedy.  The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." Senate Bill 10 meets this standard.

{¶ 24} By their voluntary acts, sex offenders have surrendered certain protections that arguably are afforded to other citizens.  Their conviction of felony offenses puts them into a class that has already been deemed to have no expectation of finality in the consequences of the judgments against them.[48]

{¶ 25} There is a vast difference between what can be described as a "burden" and what can be considered a "penalty."  The government—rather routinely— imposes additional burdens on all of its citizens in the name of some legitimate

---

**42.**  See id.

**43.**  See id.

**44.**  See id.

**45.**  See *State v. King*, supra, at ¶ 23, citing *Smith v. Doe*, supra, at 102–103, 123 S.Ct. 1140, 155 L.Ed.2d 164.

**46.**  See id.

**47.**  See supra at 105, 123 S.Ct. 1140, 155 L.Ed.2d 164.

**48.**  See *State v. Cook*, supra, at 411–412, 700 N.E.2d 570.

governmental interest. Obvious examples of these are changes and enhancements in the tax codes, licensing requirements, and the recent passport requirements for all travel, even to neighboring countries. Every citizen must conform to these more complicated and arguably "burdensome" governmental regulations. But that does not make these requirements "penalties." They are legitimate exercises of governmental regulatory power to protect a public interest or to further a legitimate governmental purpose.

{¶ 26} The same can be said for the additional registration requirements of Senate Bill 10. The expanded reporting requirements resulting from reclassification can be analogized to numerous requirements placed on all citizens whenever governmental mandates require that additional action be taken in the arena of regulated activity. The fact that Sewell belongs to a class that has voluntarily surrendered certain protections and rights makes the conclusion that Senate Bill 10's tier-classification and registration requirements are constitutional even more certain.

{¶ 27} We hold that Sewell has not shown by the clearest proof that Senate Bill 10's registration and notification provisions have the effect of converting a remedial statute into a punitive one. The registration and notification provisions of Senate Bill 10 are remedial and not punitive. Therefore, they do not violate the Double Jeopardy Clause.

### III. Separation of Powers

{¶ 28} Sewell argues that Senate Bill 10's requirement that the Attorney General reclassify him as a Tier III sex offender violates the separation-of-powers doctrine inherent in Ohio's Constitution because the legislature has directed the Attorney General to reopen a final court judgment.

{¶ 29} Under former R.C. Chapter 2950, an offender who committed a sexually oriented offense that was not registration-exempt was classified by operation of law as a sexually oriented offender. No judicial action was required to classify one who had committed a sexually oriented offense as a sexually oriented offender, and courts had no discretion to determine that a sex offender was not a sexually oriented offender. Under Senate Bill 10, sex offenders are placed by operation of law into tiers based upon the crime committed. Courts have no discretion to determine that a sex offender should not be placed into a tier. Under both systems, offenders are essentially classified by the offense they committed.[49]

---

49. See *State v. Bodyke*, 6th Dist. Nos. H–07–040, H–07–041, and H–07–042, 2008-Ohio-6387, 2008 WL 5148003, at ¶ 22, citing *Montgomery v. Leffler*, 6th Dist. No. H–08–011, 2008-Ohio-6397, 2008 WL 5147935.

{¶ 30} The Third Appellate District stated in *In re Smith* [50] that the classification of sex offenders is a "creature of the legislature," and therefore "the power to classify is properly expanded or limited by the legislature." [51] As the Eleventh Appellate District pointed out in *State v. Swank*, [52] "The enactment of laws establishing registration requirements for, e.g., motorists, corporations, or sex offenders, is traditionally the province of the legislature and such laws do not require judicial involvement." [53]

{¶ 31} Senate Bill 10 does not require the Attorney General to reopen final court judgments. It simply changes the classification and registration requirements for sex offenders and requires that the new procedures be applied to sex offenders currently registered under the old law or offenders currently incarcerated for committing sexually oriented offenses. [54] Because Sewell had no reasonable expectation that his sex offense would never be made the subject of future sex-offender legislation, [55] Senate Bill 10 cannot be said to abrogate a final judicial determination. [56] We hold that Senate Bill 10 does not violate the separation-of-powers doctrine. [57]

## IV. Due Process

{¶ 32} Sewell argues that the Attorney General's reclassification of him as a Tier III offender violated his due-process rights under Section 16, Article I of the Ohio Constitution because he had a protected liberty interest in his former classification, which arose from his "settled expectation" that as a sexually oriented offender he would have to register for only ten years as reflected in a final court order.

{¶ 33} Sewell had no reasonable expectation that his sex offense would never be made the subject of future sex-offender legislation. [58] As the Second Appellate District has stated, "Indeed *Cook* indicates that convicted sex offenders have no

---

**50.** See fn. 5, supra.

**51.** See id. at ¶ 39.

**52.** 11th Dist. No. 2008–L–019, 2008-Ohio-6059, 2008 WL 4964659.

**53.** See id. at ¶ 99.

**54.** See *Slagle v. State*, 145 Ohio Misc.2d 98, 2008-Ohio-593, 884 N.E.2d 109.

**55.** See *State v. Cook*, supra.

**56.** See *State v. Randlett*, 4th Dist. No. 08CA3046, 2009-Ohio-112, 2009 WL 81325.

**57.** See *State v. Williams*, supra; *State v. Byers*, supra.

**58.** See *State v. Cook*, supra.

reasonable 'settled expectations' or vested rights concerning the registration obligations imposed on them. If the rule were otherwise, the initial version of R.C. Chapter 2950 could not have been applied retroactively in the first place." [59] Sewell has not shown that he was deprived of a protected liberty or property interest.[60] The retroactive application of Senate Bill 10's tier-classification and registration requirements did not violate Sewell's due-process rights.

{¶ 34} We hold that the retroactive application of Senate Bill 10's tier-classification and registration requirements does not violate the prohibition on retroactive laws contained in Section 28, Article II of the Ohio Constitution, the Ohio Constitution's Due Process Clause, the Double Jeopardy Clause of the Ohio Constitution, or the separation-of-powers doctrine. The assignment of error is overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

HILDEBRANDT and DINKELACKER, JJ., concur.

---

59. See State v. King, supra, at ¶ 33.

60. See State v. Swank, supra, at ¶ 105.