DECISION.
{¶ 1} Fernando North appeals his convictions for aggravated robbery, kidnapping, felonious assault, and rape. We conclude that his assignments of error have no merit, so we affirm the judgment of the trial court.
 {¶ 2} The offenses for which North was convicted occurred over a period of three days in November 2006. Around 2:15 a.m. on November 7, North approached Miller Chunn as she left her job in the Mt. Adams area of Cincinnati. North showed her a gun and threatened to kill her if she screamed. North then hit her with the gun and forced her into her car. After taking Chunn's purse and cellular phone, North told her that she was coming with him. Fortunately, Chunn was able to exit from the car and flee.
 {¶ 3} The next morning, around 1:00 a.m., North accosted Danielle Blaha as she left a bar in the downtown area of Cincinnati. North pointed a gun at Blaha, put a hand over her mouth, and threatened her. A homeless man came to Blaha's aid, and North fled with Blaha's purse and cellular phone.
 {¶ 4} On November 6, around 10:00 p.m., North approached a young couple on an overlook near a bridge in downtown Cincinnati. North brandished a gun and ordered the couple to go to an area of the bridge that was blocked from the view of others. North told the couple to kneel on the ground and took $50 from the man. North then used shoelaces to tie up the man and proceeded to rape the woman next to the man. After raping the woman, North ordered her to put her clothes back on. He then walked her across the bridge to Newport, Kentucky, to the man's car. North drove the woman back to Cincinnati and ordered her to use her ATM card to withdraw $500 from two bank machines and $300 from another. After the money had been withdrawn, *Page 3 
North drove the woman to a gas station, where he purchased gas and cigarettes. North then drove the woman to an abandoned apartment building and raped her again. Finally, he drove her back to the local university she attended and released her.
 {¶ 5} Because both the man and the woman quickly contacted police officers, the officers were able to arrest North shortly after the November 9 offenses. For the offenses committed on November 7, North was charged with one count of aggravated robbery, two counts of robbery, one count of kidnapping, and one count of felonious assault. For the November 8 offenses, North was charged with one count of aggravated robbery, one count of robbery, and one count of kidnapping. For the offenses on November 9, North was charged with six counts of aggravated robbery, seven counts of robbery, two counts of kidnapping, and two counts of rape with specifications.
 {¶ 6} With respect to the offenses committed on November 7, North entered an Alford plea[1] to one count of aggravated robbery, one count of kidnapping, and one count of felonious assault. For the November 8 offenses, North entered an Alford plea to one count of aggravated robbery and one count of kidnapping. For the November 9 offenses, North pleaded guilty to six counts of aggravated robbery, two counts of kidnapping, and two counts of rape. All the robbery counts and the specifications to the rape counts were dismissed.
 {¶ 7} The trial court sentenced North to ten years for each of the aggravated robberies that occurred on November 7 and 8 and to eight years for the felonious assault. The kidnapping counts related to the November 7 and 8 offenses were merged with the aggravated-robbery counts for purposes of sentencing. The trial court ordered these sentences to be served consecutively, but they were otherwise made concurrent *Page 4 
with the sentences for the November 9 offenses. The trial court sentenced North to ten years for each of the November 9 offenses. The sentences for three of the aggravated robberies were to be served concurrently and were also made concurrent with the sentences for all the other offenses. The remaining sentences (for seven offenses) were to be served consecutively. The total aggregate sentence imposed was 70 years.
 {¶ 8} In addition to sentencing North, the trial court conducted a sexual-predator hearing. At the conclusion of the hearing, the court adjudicated North a sexual predator.
 {¶ 9} In his first assignment of error, North asserts that the trial court erred when it sentenced him for the two kidnappings that occurred on November 9. North contends that the kidnapping count related to the male victim should have been merged with the aggravated-robbery count because the offenses were allied offenses of similar import. Likewise, he claims that the kidnapping count related to the female victim should have been merged with the rape counts.
 {¶ 10} Under R.C. 2941.25, if a defendant commits two or more allied offenses of similar import, he can only be convicted of one. But if two allied offenses are committed with a separate animus, the defendant may be convicted of each.[2] Thus, "[w]here the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to a demonstrate a significance independent of the *Page 5 
other offense, there exists a separate animus as to each offense sufficient to support separate convictions. "[3]
 {¶ 11} Here, there is no question that each of the kidnappings was committed with an animus separate from the underlying felony. The movement and the restraint of the male victim were not incidental to the robbery of him. After moving him and his girlfriend from the overlook and after taking $50 from him, North tied up the man and wrapped a sweatshirt around his head. The man remained restrained for at least an hour, well after the robbery had been accomplished.
 {¶ 12} Similarly, the kidnapping of the female victim was committed with a separate animus. After raping her on the bridge, North walked the woman across the bridge to Newport and then drove her to several locations in Cincinnati before raping her again. He then drove her to a separate location where he released her. The asportation was in no way merely incidental to the rape offenses.
 {¶ 13} The kidnapping offenses that occurred on November 9 can be contrasted with those that occurred on November 7 and 8. With respect to the earlier kidnappings, the restraint was incidental to the aggravated robberies that were committed by North. The trial court properly merged those counts that occurred on November 7 and 8. And the trial court did not err when it refused to merge the kidnapping counts that occurred on November 9. The first assignment of error is overruled.
 {¶ 14} In his second assignment of error, North asserts that the trial court erred when it adjudicated him a sexual predator. We disagree.
 {¶ 15} Before considering whether the trial court erred in adjudicating North a sexual predator, we address the state's contention that North was classified as a Tier-III *Page 6 
sexual offender under the recently amended R.C. Chapter 2950. Under the amended statutes, sexual offenders are automatically classified into one of three tiers, depending on the offenses they have committed. Because he was in prison on December 1, 2007, North was classified as a Tier-III sexual offender by operation of law.[4] But even though he was classified as a Tier-III sexual offender, North would not have been subject to the community-notification requirements under the amended statutes unless he was classified as a sexual predator under the former statutes.[5]
 {¶ 16} We must therefore consider whether the trial court's adjudication of North as a sexual predator was proper. To determine whether North was a sexual predator, the trial court had to consider all relevant factors, including those listed in R.C. 2950.09(B)(3), to determine whether he was "likely to engage in the future in one or more sexually oriented offenses."[6] The evidence that North was a sexual predator had to be clear and convincing.[7]
 {¶ 17} Given the evidence before us, we would be hard-pressed to find a situation where a sexual-predator adjudication would be more appropriate. Although he had not committed prior sexual offenses, North's record was extensive. His contact with the justice system began in his childhood. North had been paroled just days before his crime spree in November 2006. His prior offenses included the offenses committed in the two days before the rapes. The offenses to which he entered an Alford plea also involved young women, one of whom he tried to abduct. The trial court considered North's other abusive behavior toward women, which was reported in the court clinic's report. A psychologist reported her opinion that North had an antisocial-personality *Page 7 
disorder, and that, based on the Static-99 evaluation, North was at a high risk to offend again. Additionally, the court considered the extreme cruelty with which North had committed the rapes.
 {¶ 18} We conclude that the trial court's determination that North was likely to engage in one or more sexually oriented offenses in the future was not against the manifest weight of the evidence. The second assignment of error is overruled, and we therefore affirm the judgment of the trial court.
Judgment affirmed.
Hendon and Dinkelacker, JJ., concur.
[1] North Carolina v. Alford (1970), 400 U.S. 25, 91 S.Ct. 160.
[2] R.C. 2941.25(B).
[3] State v. Logan (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, syllabus. See, also, State v. Fears, 86 Ohio St.3d 329, 1999-Ohio-111,715 N.E.2d 136.
[4] R.C. 2950.01(G) and 2950.032(A)(1)(a).
[5] See State v. Clay, 1st Dist. No. C-070752,2008-Ohio-2980, ¶¶ 9-22.
[6] R.C. 2950.09(B)(3) and 2950.01(E)(1).
[7] R.C. 2950.09(B)(4). *Page 1