OPINION
{¶ 1} Lawrence Desbiens pled no contest to two counts of sexual imposition, a third degree misdemeanor, and two counts of gross sexual imposition of a child less than thirteen years of age, a third degree felony. The court found him guilty on all counts and sentenced him to one year in prison for gross sexual imposition to be served concurrently with sixty days in jail *Page 2 
for sexual imposition. Pursuant to a stipulation of the parties, the court designated Desbiens a sexually-oriented offender and informed him that he would be re-designated a Tier II sex offender as of January 1, 2008. Desbiens appeals from his sentence, raising six assignments of error. For the following reasons, the judgment will be affirmed.
 {¶ 2} "THE COURT ABUSED ITS DISCRETION IN SENTENCING MR. DESBIENS TO PRISON WHEN ALL THE RELEVANT INFORMATION INDICATED HE SHOULD RECEIVE PROBATION."
 {¶ 3} Desbiens claims that the information presented at sentencing was "overwhelmingly in favor of probation" and, thus, the trial court erred in imposing a prison sentence.
 {¶ 4} In imposing a sentence, a trial court is no longer required to make findings of fact or to state its reasons for the sentence imposed. See State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470;State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, at ¶ 38. Courts must still consider the purposes of felony sentencing, as set forth in R.C. 2929.11, as well as seriousness and recidivism factors, set forth in R.C. 2929.12. Mathis at ¶ 38.
 {¶ 5} In support of his assertion that the trial court erred in imposing a prison sentence, Desbiens relies upon the statements of the mother of T.M., one of the victims, that she believed that Desbiens should receive treatment and that prison would be an "injustice." Desbiens also relies on the psychological assessment portion of the presentence investigation report ("PSI"), which recommended treatment and probation and indicated that he was a "zero risk for recidivism." Desbiens notes that he had also been a victim of sexual abuse as a child. (Although a PSI was filed, the psychological assessment portion of the PSI is not in the record. *Page 3 
For purposes of this appeal, we will accept Desbiens' representations about the psychological assessment as true.)
 {¶ 6} Although Desbiens focuses on the favorable aspects of the PSI and victim impact statements, the court had other evidence which supported the imposition of a prison sentence. The charges against Desbiens stemmed from contact with two of his step-grandchildren, both under the age of thirteen at the time of the offenses. According to the PSI, T.M. reported in 2007 that Desbiens had been abusing her for approximately six years. She stated that Desbiens told her not to tell anyone about the abuse, because it would make her grandmother "sad." T.M. reported that Desbiens would touch her between her legs and that he sometimes rubbed so hard that the skin would become raw, requiring ointment. T.M. identified approximately fifteen instances of sexual abuse. Desbiens also abused another step-granddaughter, J.M., in 1998. Desbiens attributed his conduct to "emotional and spiritual weaknesses due to his own history of sexual abuse when he was a child."
 {¶ 7} The PSI victim impact statement regarding J.M. indicated that J.M. has weekly counseling and that the family relationship between the grandmother and the victim's family has broken due to the abuse. The statement recommended at least two years in prison. The investigating officer of the PSI also recommended a term of incarceration on the grounds that the abuse was not an isolated incident but, instead, was perpetuated over a period of at least eight years; that the abuse caused substantial psychological damage; and irreparable damage to the family relationships.
 {¶ 8} At the sentencing hearing, T.M.'s step-father read letters from T.M. and T.M.' s mother. In her letter, T.M. expressed conflicting feelings about wanting Debiens to be punished *Page 4 
and forgiving him. She wrote that she has times where she is scared and sad and wants him "to go away for very long time and pay for the times he hurt me." She also stated that she misses her grandmother, is angry about the loss of the relationship, and feels that her grandmother has "been taken from me literally." Although T.M.'s mother focused on forgiving Debiens and having him receive counseling, her letter also indicated that the family has been irreversibly damaged by his actions and there have been strong feelings of anger and betrayal. T.M. is involved in therapy due to his abuse.
 {¶ 9} The evidence before the trial court indicated that Desbiens abused more than one young victim. Desbiens was the children's step-grandfather, thus facilitating the offense. Both children suffered psychological trauma, requiring counseling. T.M. indicated that Desbiens' abuse caused her skin to be irritated, requiring ointment. Based on the offenses, Desbiens could have received a maximum sentence of five years in prison for gross sexual imposition. Upon review of the record, we find no abuse of discretion in the trial court's imposition of concurrent sentences totaling one year in prison.
 {¶ 10} The first assignment of error is overruled.
 {¶ 11} II. "THE TIERED OFFENDER CLASSIFICATION VIOLATES THE EX POST FACTO CLAUSE OF THE U.S. CONSTITUTION."
 {¶ 12} III. "THE AUTOMATIC CHANGE FROM A SEXUALLY ORIENTED OFFENDER TO A TIER II OFFENDER VIOLATED MR. DESBIENS SUBSTANTIVE DUE PROCESS RIGHTS."
 {¶ 13} IV. "R.C. 2950.01 ET. SEQ VIOLATES THE RIGHT TO CONTRACT UNDER THE OHIO AND U.S. CONSTITUTIONS." *Page 5 
 {¶ 14} V. "THE OPTIONAL HEARING OPPORTUNITY OF THE TIERED STATUTE VIOLATES PROCEDURAL DUE PROCESS."
 {¶ 15} VI. "R.C. 2950.01 ET. SEQ. IS OVERBROAD AND UNCONSTITUTIONALLY IMPERMISSIABLE [SIC]."
 {¶ 16} In his second, third, fourth, fifth, and sixth assignments of error, Desbiens claims that his classification as a Tier II offender under the new sexual offender classification scheme, which was enacted in Senate Bill 10, effective January 1, 2008, is unconstitutional. The state responds that Desbiens has waived his constitutional challenges on appeal by failing to raise them in the trial court. Desbiens denies that he was required to raise his constitutional arguments in the trial court on the ground that the statute did not take effect until after his sentencing.
 {¶ 17} The "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus. Assuming arguendo that Desbiens was required to raise his constitutional challenges at sentencing due to the trial court's notification that he would be classified a Tier II offender as of January 1, 2008, this Court nevertheless has discretion to consider his constitutional arguments under a plain-error analysis.In re M.D. (1988), 38 Ohio St.3d 149, 151, 527 N.E.2d 286; State v.Chappie, Montgomery App. No. 22198, 2008-Ohio-1157, ¶ 14. An error qualifies as "plain error" only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise.State v. Macias, Darke App. No. 1562, 2003-Ohio-1565, citing *Page 6 State v. Yarbrough, 95 Ohio St.3d 227, 245, 2002-Ohio-2126,767 N.E.2d 216. Having reviewed SB. 10, we find no error — plain or otherwise — in the application of S.B. 10 to Desbiens.
 {¶ 18} In his assignments of error, Desbiens claims that S.B. 10 violates several constitutional rights, including his right to protection from ex post facto laws, his right to substantive due process, his right to contract, and his right to procedural due process. Initially, Desbiens acknowledges that the Supreme Court of Ohio in Statev. Cook (1998), 83 Ohio St.3d 404, 1998-Ohio-291, 700 N.E.2d 750, found the former version of R.C. Chapter 2950 to be constitutional. However, he argues that S.B. 10 is an unconstitutional ex post facto law, because the new statute does not base classification on an individualized analysis, the intent is criminal punishment, and the reporting requirements are significantly increased.
 {¶ 19} Second, Desbiens asserts that plea bargaining is a fundamental right, and that he had a right to be labeled a sexually oriented offender due to his plea bargain. Desbiens maintains that the new tiered system violates his fundamental rights by designating him without regard to the dangerousness of the offender. In a similar vein, Desbiens next claims that the legislature had no power to implement S.B. 10 retroactively and thereby affect his plea bargain with the state. Desbiens asserts that the retroactive application of S.B. 10 violates the right to contract under the Ohio and federal constitutions.
 {¶ 20} Fourth, Desbiens asserts that the optional hearing portion of S.B. 10 violates his right to procedural due process. He claims that S.B. 10 does not provide an automatic hearing to challenge the re-classification, despite the fact that he has a "vested interest" as a sexually oriented offender. *Page 7 
 {¶ 21} Finally, Desbiens claims that SB. 10 is overbroad and unconstitutionally impermissible because S.B. 10 does not look to the offender's individualized behavior. He also claims that the hearing provision of S.B. 10 impermissibly places the burden on the offender to request a hearing and to establish that the designated tier is inapplicable.
 {¶ 22} In a recent opinion, we affirmed the constitutionality of S.B. 10 after reviewing S.B. 10 and Ohio's precedent regarding the constitutionality of prior versions of Ohio's sexual offender registration and notification statute. State v. King, Miami App. No. 08-CA-02, 2008-Ohio-2594. Although King arose in the context of whether an offender had a right to appointed counsel to challenge reclassification under S.B. 10, the appellant in King (also a Tier II offender) raised many of the same challenges presented by Desbiens, and we rejected each of them.
 {¶ 23} At the outset of King, we noted that the Supreme Court of Ohio has repeatedly held that the requirements of R.C. Chapter 2950 are constitutional. As recognized by Desbiens, the Cook court held that the registration and notification requirements in R.C. Chapter 2950 were non-punitive in purpose and effect. Id. at 414-423. "Thereafter, inState v. Williams, 88 Ohio St.3d 513, 2000-Ohio-428, the court reaffirmed its view that R.C. Chapter 2950 is `neither "criminal," nor a statute that inflicts punishment[.]' Id. at 528. More recently, inState v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, the court again concluded that `sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature[.]' Id. at 389. Wilson produced a three-member dissent opining that the restrictions imposed under R.C. Chapter 2950 have become more onerous since Cook and should be viewed as `part of the punishment that is imposed as a result of the offender's actions.' Id. at 392." King at ¶ 6.
 {¶ 24} Upon review of S.B. 10, we concluded that the Ohio legislature "intended to *Page 8 
enact a civil, regulatory scheme rather than to impose criminal punishment." Id. at ¶ 11. In light of the Ohio Supreme Court precedent, we further concluded that S.B. 10 was not so punitive so as to negate the legislature's non-punitive intent. In so holding, we reviewed King's arguments that S.B. 10 had a punitive effect when considering the factors set forth in Smith v. Doe (2003), 538 U.S. 84, 123 S.Ct. 1140,155 L.Ed.2d 164 (holding that the Alaska Sex Offender Registration Act was nonpunitive and its retroactive application did not violate the Ex Post Facto Clause.). First, we rejected King's assertion that S.B. 10 imposes an affirmative disability or restraint because it increases the frequency and duration of her registration requirement and requires the disclosure of more information when registering as a sex offender. We noted that the Cook court reasoned that the act of registering as a sex offender did not impose any restraint, and we reasoned that "[t]his remains true regardless of whether King is required to register once a year for ten years, as under the old law, or twice a year for twenty-five years, as S.B. 10 now requires." King at ¶ 16. As to the amount of information disseminated, we failed to see "a constitutionally meaningful distinction between S.B. 10 and the version of R.C. Chapter 2950 in effect when Wilson was decided." Id. Second, citingCook and Smith, we also rej ected King's argument that S.B. 10 is analogous to historical shaming punishments.
 {¶ 25} Third, we concluded that tying an offender's classification to the offense committed rather than to an individual assessment of dangerousness did not render S.B. 10 punitive. We stated that, "[b]y tying an offender's classification to the offense committed rather than to an individual assessment of dangerousness, the General Assembly merely adopted an alternative approach to the regulation and categorization of sex offenders." We noted that the United States Supreme Court in Smith "expressly rejected an argument that Alaska's sex- *Page 9 
offender registration obligations were retributive because they were based on the crime committed rather than the particular risk an offender posed." King at ¶ 22, citing Smith, 538 U.S. at 102-104.
 {¶ 26} Fourth, we rejected King's contention that S.B. 10 has a punitive effect because it is not rationally related to a non-punitive purpose. Although King argued that S.B. 10 is irrational because it disregards individual dangerousness and classifies offenders based solely on the offense committed, we concluded that S.B. 10 has a non-punitive purpose of protecting the public from sex offenders and that the new legislation is rationally related to this non-punitive purpose because it alerts the public to the presence of sex offenders. We likewise rejected her argument that S.B. 10 was excessive by requiring low-risk, non-dangerous offenders to register more frequently and for a longer duration. We therefore concluded in King that S.B. 10 sets forth a civil and non-punitive reclassification and registration scheme.
 {¶ 27} Next, we addressed King's argument that, even if S.B. 10 were civil and non-punitive, the new statute infringed on a liberty interest, namely her "settled expectation" under the former version of R.C. Chapter 2950 that she would be required to register as a sex offender for ten years. We stated:
 {¶ 28} "[A] convicted felon has no reasonable expectation that his or her criminal conduct will not be subject to future legislation.Cook, 83 Ohio St.3d at 412. For that reason, the Cook court held a former version of R.C. Chapter 2950 could be applied to sex offenders who committed their crimes before the legislation took effect. Similarly, King, a convicted felon, could have no reasonable expectation that her criminal conduct would not be subject to future versions of R.C. Chapter 2950. Indeed, Cook indicates that convicted sex offenders have *Page 10 
no reasonable `settled expectations' or vested rights concerning the registration obligations imposed on them. If the rule were otherwise, the initial version of R.C. Chapter 2950 could not have been applied retroactively in the first place." King at ¶ 33.
 {¶ 29} Finally, we noted that the Supreme Court of Ohio has held that imposing the registration requirements on a sex offender without holding a hearing did not deprive the defendant of any protected liberty interest. King at ¶ 34, citing State v. Hayden, 96 Ohio St.3d 211,2002-Ohio-4169. Thus, we found that granting King a hearing without the benefit of counsel did not deprive her of a liberty interest.
 {¶ 30} Turning to the case before us, we find that King disposes of many of Desbiens' constitutional arguments. Based on our analysis inKing, we reject Desbiens' arguments that SB. 10 is constitutionally overbroad and distinguishable from prior versions of R.C. Chapter 2950
due to the new statute's lack of individualized assessments, alleged punitive intent, and increase in reporting requirements. In light of our conclusion in King that S.B. 10 is civil and non-punitive, its application does not violate the Ex Post Facto Clause of the United States Constitution, which applies only to criminal statutes.Cook, 83 Ohio St.3d at 415. Desbiens' contention that the hearing requirements violate his right to due process is also unavailing.
 {¶ 31} Although not addressed in King, we also find Desbiens' assertion that S.B. 10 interferes with his right to contract, i.e. his plea bargain, is without merit. As stated above, Desbiens asserts that he has a contractual right to be designated a sexually oriented offender due to his plea bargain. According to the record, Desbiens entered a plea of no contest to two counts of sexual imposition and two counts of gross sexual imposition on September 27, 2007. The plea form signed by Desbiens indicated the maximum possible fines and jail/prision sentence, *Page 11 
and stated "Other sanctions: sexual designation by the Court."
 {¶ 32} At the November 1, 2007 sentencing hearing, the prosecutor informed the trial court that the parties agreed that Desbiens would be classified "as a sexually-oriented offender up until I believe the law changes January 1st and I believe Mr. Desbiens falls under Tier 2." Thereafter, the court confirmed with the parties that they had stipulated that Desbiens would be a sexually-oriented offender. The court then told Desbiens that he was stipulated a sexually-oriented offender, and it informed Desbiens of the requirements associated with that designation. The court then continued: "Despite all that I just advised you of, all this is going to be changed on January 1st of 2008. On that date you will become, based upon the specific offense that you have pled guilty to, you will be classified then as a Tier 2 sex offender * * *." Desbiens signed forms which acknowledged that the requirements for the sexually-oriented offender classification and the Tier II classification had been explained to him.
 {¶ 33} The record does not support Desbiens' assertion that he had a contractual right to be a sexually-oriented offender beyond January 1, 2008. Rather, the transcript of the sentencing hearing establishes that he was stipulated as a sexually-oriented offender only until SB. 10 became effective, at which time he would become a Tier II offender. We find no evidence to support a breach of his plea agreement or interference with his constitutional right to contract.
 {¶ 34} The second, third, fourth, fifth, and sixth assignments of error are overruled.
 {¶ 35} The judgment of the trial court will be affirmed.
FAIN, J., and GRADY, J., concur.
 Copies mailed to: *Page 12 
Johnna M. Shia
Richard L. Kaplan
 Hon. Mary L. Wiseman *Page 1