OPINION
{¶ 1} Delinquent-Appellant Marcus D. Gant ("Gant") appeals from the February 29, 2008 Judgment Entry of the Court of Common Pleas of Allen County, Ohio, Juvenile Division adjudicating Gant to be a Tier III Juvenile Offender Registrant.
 {¶ 2} This matter stems from an incident occurring on July 31, 2005 in which Gant engaged in sexual intercourse with a 12-year-old girl. Gant was originally charged, in juvenile court, with rape. However, on December 27, 2005, Gant admitted to the charge of attempted rape and was found to be a delinquent child based on this admission.
 {¶ 3} A dispositional hearing was held on February 16, 2006. The juvenile court committed Gant to the care and custody of the Ohio Department of Youth Services ("DYS") for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed the age of twenty-one years.
 {¶ 4} Gant was released from DYS custody in December, 2006. On January 24, 2007 a pre-trial was held on Gant's sexual offender classification hearing. Gant requested a sexual offender classification examination be completed prior to the actual sexual offender classification hearing. The juvenile court granted this request and scheduled a second pre-trial for April 4, 2007. Gant *Page 3 
did not appear for the April 4, 2007 pre-trial and a bench warrant issued for his arrest.
 {¶ 5} Gant was subsequently arrested on November 16, 2007. The pre-trial was rescheduled for December 19, 2007, at which time Gant requested new counsel. Gant's request for new counsel was granted. After the appointment of new counsel, the sexual offender classification hearing was then scheduled for January 23, 2008.
 {¶ 6} At the January 23, 2008 hearing, the juvenile court found Gant to be a Tier III Juvenile Offender Registrant under the new sexual offender registration statutes as enacted by Senate Bill 10, effective January 1, 2008. The juvenile court also found that Gant was not a public registry qualified juvenile offender registrant.
 {¶ 7} Gant now appeals, asserting five assignments of error.
 ASSIGNMENT OF ERROR I THAT THE APPLICATION OF OHIO'S ADAM WALSH ACT TO THIS CHILD IS A RETROACTIVE APPLICATION OF OHIO'S ADAM WALSH ACT VIOLATES THE PROHIBITION ON EX POST FACTO LAWS IN ARTICLE I, SECTION 10 OF THE UNITED STATES CONSTITUTION.
 ASSIGNMENT OF ERROR II THE RETROACTIVE APPLICATION OF OHIO'S ADAM WALSH ACT VIOLATES THE PROHIBITION ON RETROACTIVE LAWS IN ARTICLE II, SECTION 28 OF THE OHIO CONSTITUTION. *Page 4 
 ASSIGNMENT OF ERROR III APPLICATION OF THE ADAM WALSH ACT TO THIS OFFENDER VIOLATES THE DOUBLE JEOPARDY CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTION.
 ASSIGNMENT OF ERROR IV THE APPLICATION OF THE ADAM WALSH ACT TO THIS OFFENDER VIOLATES THE RIGHT OF CONTRACT PURSUANT TO THE OHIO AND UNITED STATES CONSTITUTIONS.
 ASSIGNMENT OF ERROR V APPLICATION OF THE ADAM WALSH ACT TO THIS OFFENDER VIOLATES AND CONTRADICTS THE HISTORY AND PURPOSE OF JUVENILE JUSTICE IN OHIO.
 {¶ 8} As an initial matter, we note that the concerns raised in Gant's first three assignments of error have been recently addressed by this Court in In re Smith, 3rd Dist. No. 1-07-58,2008-Ohio-3234. For ease of discussion, we choose to address Gant's first three assignments of error together. In his first three assignments of error, Gant argues that the application of Senate Bill 10 violates various constitutional provisions; specifically 1) the retroactive application violates the ex post facto clause of the United States Constitution; 2) the retroactive application violates the prohibition on retroactive laws contained in the Ohio Constitution; and 3) the retroactive application amounts to double jeopardy. *Page 5 
 {¶ 9} With respect to the constitutionality of an enactment of the General Assembly, we note that the Ohio Supreme Court has previously held that
 "[a]n enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." Id. at 147, 57 O.O. at 137, 128 N.E.2d at 63. "That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." Xenia v. Schmidt (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus; State ex rel. Durbin v. Smith (1921), 102 Ohio St. 591, 600, 133 N.E. 457, 460; Dickman, 164 Ohio St. at 147, 57 O.O. at 137, 128 N.E.2d at 63.
State v. Cook, 83 Ohio St.3d 404, 409, 700 N.E. 2d 570, 1998-Ohio-291.
 {¶ 10} In State v. Cook, 83 Ohio St.3d 404, the Ohio Supreme Court addressed whether Ohio's newly enacted sex offender statutes violated the retroactivity clause of the Ohio Constitution or the ex post facto clause of the United States Constitution as applied to previously convicted defendants. The court found that they did not. In State v.Williams, 88 Ohio St.3d 513, 728 N.E.2d 342, 2000-Ohio-428 the Ohio Supreme Court further held that those sex offender statutes did not violate double jeopardy or equal protection provisions of the United States Constitution. *Page 6 
 {¶ 11} To determine whether the Cook and Willams decisions are controlling here, we first address how Senate Bill 10 changed the sex offender registration statutes. Perhaps the most fundamental changes occur in R.C. 2950.01 which not only renames Ohio's sex offender classifications, but imposes different criteria for the imposition of the sex offender label.
 {¶ 12} Prior to the imposition of Senate Bill 10, a sentencing court was required to determine whether sex offenders fell into one of the following classifications: (1) sexually oriented offender; (2) habitual sex offender; or (3) sexual predator. R.C. 2950.09; State v. Cook,83 Ohio St.3d at 407. When the trial court made the determination that an offender should be classified as a sexual predator, the judge was to consider all relevant factors, including, but not limited to, all of the following enumerated in R.C. 2950.09(B)(3):
 (a) The offender's . . . age;
 (b) The offender's . . . prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed . . .;
 (d) Whether the sexually oriented offense for which sentence is to be imposed . . . involved multiple victims;
 (e) Whether the offender . . . used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting; *Page 7 
 (f) If the offender . . . previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender . . . completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender . . . participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender. . .;
 (h) The nature of the offender's . . . sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender . . . during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's . . . conduct.
R.C. 2950.09(B)(3)(a)-(j).
 {¶ 13} "In classifying an offender as a sexual predator, the Revised Code requires the trial court to make this finding only when the evidence is clear and convincing that the offender is a sexual predator." State v. Naugle, 3rd Dist. No. 2-03-32,2004-Ohio-1944 citing R.C. 2950.09(B)(4). *Page 8 
 {¶ 14} Senate Bill 10 abolished the prior classifications contained in R.C. 2950.01, substituting new classifications. An example is the definition of a Tier 1 Sex Offender/ Child-Victim Offender, as follows:
 (E) "Tier I sex offender/child-victim offender" means any of the following:
 (1) A sex offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to any of the following sexually oriented offenses:
 (a) A violation of section 2907.06, 2907.07, 2907.08, or 2907.32 of the Revised Code;
 (b) A violation of section 2907.04 of the Revised Code when the offender is less than four years older than the other person with whom the offender engaged in sexual conduct, the other person did not consent to the sexual conduct, and the offender previously has not been convicted of or pleaded guilty to a violation of section 2907.02, 2907.03, or 2907.04 of the Revised Code or a violation of former section 2907.12 of the Revised Code;
 (c) A violation of division (A)(1), (2), (3), or (5) of section 2907.05 of the Revised Code;
 (d) A violation of division (A)(3) of section 2907.323 of the Revised Code;
 (e) A violation of division (A)(3) of section 2903.211, of division (B) of section 2905.03, or of division (B) of section 2905.05 of the Revised Code;
 (f) A violation of any former law of this state, any existing or former municipal ordinance or law of another state or the United States, any existing or former law applicable in a military court or in an Indian tribal court, or any existing or former law of any nation other than the United States, that is or *Page 9 was substantially equivalent to any offense listed in division (E)(1)(a), (b), (c), (d), or (e) of this section;
 (g) Any attempt to commit, conspiracy to commit, or complicity in committing any offense listed in division (E)(1)(a), (b), (c), (d), (e), or (f) of this section.
 (2) A child-victim offender who is convicted of, pleads guilty to, has been convicted of, or has pleaded guilty to a child-victim oriented offense and who is not within either category of child-victim offender described in division (F)(2) or (G)(2) of this section.
 (3) A sex offender who is adjudicated a delinquent child for committing or has been adjudicated a delinquent child for committing any sexually oriented offense and who a juvenile court, pursuant to section 2152.82, 2152. 83, 2152.84, or 2152.85 of the Revised Code, classifies a tier I sex offender/child-victim offender relative to the offense.
 (4) A child-victim offender who is adjudicated a delinquent child for committing or has been adjudicated a delinquent child for committing any child-victim oriented offense and who a juvenile court, pursuant to section 2152.82, 2152.83, 2152.84, or 2152.85 of the Revised Code, classifies a tier I sex offender/child-victim offender relative to the offense.
R.C. 2950.01.
 {¶ 15} The section also provides similar definitions of Tier II and Tier III sex offenders, and leaves little, if any, discretion in classification to the court that sentenced the offender. R.C. 2950.01(F), (G). Prior to Senate Bill 10, "in those cases where an offender is convicted of a violent sexually oriented offense and also of a specification alleging that he or she is a sexually violent predator, the sexual predator label attaches automatically. R.C. 2950.09(A). However, in all *Page 10 
other cases of sexually oriented offenders, only the trial court may designate the offender as a predator, and it may do so only after holding a hearing where the offender is entitled to be represented by counsel, testify, and call and cross-examine witnesses. R.C. 2950.09(B)(1) and (C)(2)." Cook, 83 Ohio St.3d at 407. Now, that discretion is more limited. The new law severely limits the discretion of the trial court in imposing a certain classification on offenders. Instead, the new law requires trial courts to merely place the offender into a category based on their offense.
 {¶ 16} Senate Bill 10 also provides for the reclassification of all offenders who were classified prior to its enactment. R.C. 2950.031; R.C. 2950.032. This reclassification process affords no deference to the prior classification given by the trial court. Rather, offenders are reclassified based solely on the new statutes as articulated in Senate Bill 10 which classify offenders based on the offense they committed.
 {¶ 17} In State v. Cook (August 7, 1997), 3rd Dist. No. 1-97-21 this Court found Ohio's sex offender classification statutes to be unconstitutional. Specifically, this Court found that with respect to Cook, who committed his crimes before new sex offender legislation was effective, but was sentenced after, that the sex offender statutes violated the Ohio Constitutional protection against retroactive laws. *Page 11 
 To the extent it imposes additional duties and attaches new disabilities to past transactions, the statute is retroactive and violates the Ohio Constitution. Thus, as applied to Cook, R.C. 2950.09 is a retroactive application of a legislative enactment and Cook cannot be required to register as a sexual predator. However, Cook can be required to register as a sexual offender, pursuant to the law in force at the time of his offense. Since R.C. 2950.09, if applied to Cook, violates the Ohio Constitution, we need not address the issue of whether it violates the ex post facto clause of the United States Constitution. Cook's second assignment of error is sustained.
State v. Cook, supra, at *4.
 {¶ 18} The Ohio Supreme Court reversed the decision of this Court, inCook. In essence, the Ohio Supreme Court found that the sex offender registration statutes were remedial in nature and therefore, did not violate the ban on retroactive laws as set forth in Section 28, Article II of the Ohio Constitution. The court reasoned as follows:
 This court has held that where no vested right has been created, "a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration * * * created at least a reasonable expectation of finality." State ex rel. Matz v. Brown (1988), 37 Ohio St.3d 279, 281, 525 N.E.2d 805, 807-808.
 * * *
 Under Van Fossen and Matz, we conclude that the registration and address verification provisions of R.C. Chapter 2950 are de minimis procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950. As stated by the New Jersey Supreme Court in Doe v. Poritz (1995), 142 N.J. 1, 662 A.2d 367, "if the law did not apply to previously-convicted offenders, notification would provide practically no protection now, and *Page 12 relatively little in the near future. The Legislature reached the irresistible conclusion that if community safety was its objective, there was no justification for applying these laws only to those who offend or who are convicted in the future, and not applying them to previously-convicted offenders. Had the Legislature chosen to exempt previously-convicted offenders, the notification provision of the law would have provided absolutely no protection whatsoever on the day it became law, for it would have applied to no one. The Legislature concluded that there was no justification for protecting only children of the future from the risk of reoffense by future offenders, and not today's children from the risk of reoffense by previously-convicted offenders, when the nature of those risks were identical and presently arose almost exclusively from previously-convicted offenders, their numbers now and for a fair number of years obviously vastly exceeding the number of those who, after passage of these laws, will be convicted and released and only then, for the first time, potentially subject to community notification." Id. at 13-14, 662 A.2d at 373.
 Consequently, we find that the registration and verification provisions are remedial in nature and do not violate the ban on retroactive laws set forth in Section 28, Article II of the Ohio Constitution.
Cook, 83 Ohio St.3d at 412-413.
 {¶ 19} The Cook Court also determined that Ohio's sex offender statutes did not violate the ex post facto clause of the United States Constitution, finding, after significant analysis, as follows:
 R.C. Chapter 2950 serves the solely remedial purpose of protecting the public. Thus, there is no clear proof that R.C. Chapter 2950 is punitive in its effect. We do not deny that the notification requirements may be a detriment to registrants, but the sting of public censure does not convert a remedial statute into a punitive one. Kurth Ranch, 511 U.S. at 777, 114 S.Ct. at 1945, 128 L.Ed.2d at 777, fn. 14. Accordingly, we find that the *Page 13 registration and notification provisions of R.C. Chapter 2950 do not violate the Ex Post Facto Clause because its provisions serve the remedial purpose of protecting the public.
Cook, 83 Ohio St.3d at 423.
 {¶ 20} In Williams, the Ohio Supreme Court addressed whether Ohio's sex offender statutes violated the double jeopardy clause. Relying on their holding in Cook, the court found that it did not, holding that
 The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Fifth Amendment to the United States Constitution; see, also, Section 10, Article I, Ohio Constitution. Although the Double Jeopardy Clause was commonly understood to prevent a second prosecution for the same offense, the United States Supreme Court has applied the clause to prevent a state from punishing twice, or from attempting a second time to criminally punish for the same offense. See Kansas v. Hendricks, 521 U.S. at 369, 117 S.Ct. at 2085, 138 L.Ed.2d at 519; Witte v. United States (1995), 515 U.S. 389, 396, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351, 361. The threshold question in a double jeopardy analysis, therefore, is whether the government's conduct involves criminal punishment. Hudson v. United States (1997), 522 U.S. 93, 101, 118 S.Ct. 488, 494, 139 L.Ed.2d 450, 460.
 This court, in Cook, addressed whether R.C. Chapter 2950 is a "criminal" statute, and whether the registration and notification provisions involved "punishment." Because Cook held that R.C. Chapter 2950 is neither "criminal," nor a statute that inflicts punishment, R.C. Chapter 2950 does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. We dispose of the defendants' argument here with the holding and rationale stated in Cook.
Williams, 88 Ohio St.3d at 527-528. *Page 14 
 {¶ 21} We are not persuaded that the Ohio Supreme Court would view the issues of criminality and punishment as applied to R.C. 2950 et. seq. in the Cook and Williams decisions any differently with regard to the provisions of Senate Bill 10. Accordingly, Gant's first, second, and third assignments of error are overruled.
 {¶ 22} In his fourth assignment of error, Gant argues that the application of Senate Bill 10 violates his right to contract. Specifically, Gant appears to argue that his admission, although not technically a guilty plea, had a similar contractual effect to a guilty plea and therefore, because the State represented they would seek a minimum sexual offender classification when he admitted to the charge of attempted rape, the enactment of Senate Bill 10 served to circumvent that agreement.
 {¶ 23} A similar argument was advanced in State v. Desbiens, 2nd Dist No. 22489, 2008-Ohio-3375. In reviewing this argument, the Second District Court of Appeals noted that inCook, the Ohio Supreme Court found that "a convicted felon has no reasonable expectation that his or her criminal conduct will not be subject to future legislation." Desbiens, at ¶ 28 quoting Cook,83 Ohio St.3d at 412. The Desbiens Court continued to follow the reasoning inCook as follows:
 For that reason, the Cook court held a former version of R.C. Chapter 2950 could be applied to sex offenders who committed their crimes before the legislation took effect. Similarly, King, a convicted felon, could have no reasonable expectation that her *Page 15 criminal conduct would not be subject to future versions of R.C. Chapter 2950. Indeed, Cook indicates that convicted sex offenders have no reasonable `settled expectations' or vested rights concerning the registration obligations imposed on them. If the rule were otherwise, the initial version of R.C. Chapter 2950 could not have been applied retroactively in the first place.
Desbiens, at ¶ 28 citing State v. King, 2nd Dist. No. 08-CA-02, 2008-Ohio-2594 at ¶ 33.
 {¶ 24} Again, with respect to Gant's fourth assignment of error, we are not persuaded that the Ohio Supreme Court would deviate from the rationale espoused in Cook in order to find that Gant's right to contract was impaired. Accordingly, Gant's fourth assignment of error is overruled.
 {¶ 25} Finally, in his last assignment of error, Gant argues that the sexual offender registration requirements as contained in Senate Bill 10 violate the "history and purpose of Juvenile Justice in Ohio." As in initial matter, we note that the provisions of Ohio's sexual offender registration statutes contain different provisions for juveniles than adult offenders. Specifically, R.C. 2152.85 allows juvenile offenders to apply for a review of their sexual offender classification, and provides in pertinent part as follows:
 (A)(1) When a juvenile court judge issues an order under section 2152.82 or division (A) or (B) of section 2152.83 of the Revised Code that classifies a delinquent child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code, upon completion of the disposition of that child made for the sexually oriented offense or the child-victim oriented offense *Page 16 on which the juvenile offender registrant order was based, the judge or the judge's successor in office shall conduct a hearing to review the effectiveness of the disposition and of any treatment provided for the child, to determine the risks that the child might re-offend, to determine whether the prior classification of the child as a juvenile offender registrant should be continued or terminated as provided under division (A)(2) of this section, and to determine whether its prior determination made at the hearing held pursuant to section 2152.831 of the Revised Code as to whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender should be continued or modified as provided under division (A)(2) of this section.
 {¶ 26} We note that the review policies provided for juveniles in R.C. 2152.85 are not available for adult sexual offenders. Additionally, R.C. 2152.85 conforms Ohio's sexual offender classification system to juveniles by allowing an offender to be re-evaluated, prove their rehabilitation to the court, and have their sexual offender status lowered or removed.
 {¶ 27} Moreover, nothing in the Ohio General Assembly's policy statement indicates that the legislature intended Ohio's Sexual Offender laws to exempt juveniles from sexual offender registration requirements. Instead, it appears that the legislature viewed juvenile sex offenders as an equal threat society needed to be protected against. R.C. 2950.02
provides the legislature's public policy declaration as follows:
 (A) The general assembly hereby determines and declares that it recognizes and finds all of the following: *Page 17 
 (1) If the public is provided adequate notice and information about offenders and delinquent children who commit sexually oriented offenses or who commit child-victim oriented offenses, members of the public and communities can develop constructive plans to prepare themselves and their children for the offender's or delinquent child's release from imprisonment, a prison term, or other confinement or detention. This allows members of the public and communities to meet with members of law enforcement agencies to prepare and obtain information about the rights and responsibilities of the public and the communities and to provide education and counseling to their children.
 * * *
 (3) The penal, juvenile, and mental health components of the justice system of this state are largely hidden from public view, and a lack of information from any component may result in the failure of the system to satisfy this paramount governmental interest of public safety described in division (A)(2) of this section.
 {¶ 28} Therefore, given that the legislature clearly intended Ohio's sexual offender registration laws to apply to juveniles, as well as the special reclassification procedures available to juveniles, we cannot find that the sexual offender registration laws are inconsistent with the juvenile justice system. Accordingly, Gant's fifth assignment of error is overruled.
 {¶ 29} For the foregoing reasons, the February 29, 2008 Judgment Entry of the Court of Common Pleas, Allen County, Ohio, Juvenile Division classifying Gant as a Juvenile Sex Offender Registrant and Tier III Sex Offender is affirmed.
Judgment Affirmed
 WILLAMOWSKI, J., concurs.
 ROGERS, J., concurs in Judgment Only. *Page 1