[Cite as *State v. Shutway*, 2016-Ohio-431.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2014-CA-33 |
| | : | |
| v. | : | Trial Court Case No. 2013-CRB-1147 |
| | : | |
| JAN E. SHUTWAY | : | (Criminal Appeal from |
| | : | Municipal Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 5th day of February, 2016.

. . . . . . . . . .

BREANNE PARCELS, Atty. Reg. No. 0089370, Champaign County Municipal Prosecutor, 205 South Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

JAN E. SHUTWAY, 573 East Church Street, Urbana, Ohio 43078
        Defendant-Appellant-Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Jan Shutway, appeals pro se from her conviction and sentence, following a no contest plea to a minor misdemeanor violation of R.C. 3707.48. After her plea, Shutway was found guilty and was sentenced to a $150 fine, plus court

costs, which were capped at $200.

{¶ 2} In support of her appeal, Shutway presents five assignments of error, which involve alleged perjury on the part of a police officer; constructive arrest; allegations that deputies exceeded their jurisdiction when they seized a firearm; allegations that the Champaign County Health District exceeded its jurisdiction in passing a regulation, because the regulation created a monopoly for water service; and allegations that the Urbana City Schools failed to provide proper notice in writing of home education requirements, as required by statute.

{¶ 3} The last assignment of error will not be addressed because it has no connection to the present case. With respect to the remaining assignments of error, we conclude the trial court did not commit any error and that the judgment should be affirmed.

I. Facts and Course of Proceedings

{¶ 4} As background information, we note that this is the second time Jan Shutway has been before our court in connection with a conviction for having violated R.C. 3707.48 by failing to vacate her residence after it had been condemned for failure to have the potable water service reconnected. *See State v. Shutway*, 2d Dist. Champaign No. 2013-CA-55, 2015-Ohio-2432, ¶ 1. In that case, we noted that on July 16, 2013, the Water Department had been instructed to shut off the water service to the Shutways' home for non-payment of the water bill. *Id.* at ¶ 2. After the Shutways failed to vacate the residence, have the water service reconnected, or give the Health District notice that they had secured another potable water supply, Jan Shutway was arrested and charged with having violated R.C. 3707.48. *Id.* at ¶ 3. Following a trial that occurred on October

10, 2013, Shutway was found guilty of the violation. We affirmed her conviction in June 2015. *Id.* at ¶ 3 and 40. In June 2015, we also affirmed the conviction of Jan Shutway's husband, John, for the same violation. *See State v. Shutway*, 2d Dist. Champaign No. 2014-CA-10, 2015-Ohio-2433.[1]

{¶ 5} On October 15, 2013, the State filed complaints in the Champaign County Municipal Court charging Jan with obstruction of official business in violation of R.C. 2921.31(A)(1), a second-degree misdemeanor, and with having violated R.C. 3707.48's prohibition against violating orders or regulations of the Board of Health. The specific allegation was that Jan failed to either vacate or correct a violation (water shut-off).

{¶ 6} Counsel was appointed for Jan. Counsel filed a motion to dismiss, alleging that Jan and her husband had been subjected to selective prosecution in violation of the Equal Protection Clauses of the Ohio and federal constitutions. Jan's counsel also filed a motion to suppress any evidence obtained pursuant to an alleged unreasonable stop, detention, and interrogation of Jan on October 13, 2013.

{¶ 7} The trial court held evidentiary hearings on March 10, 2014, and May 1, 2014, during which both the State and defense presented testimony. According to the testimony, the water at the Shutway house had been shut off on July 16, 2013, for non-payment. On August 6, 2013, a Health Department employee, Russ Wellman, went to the house and left a shut-off notice in the door. The notice indicated that the occupants had 48 hours to have the water turned back on or they would have to vacate the property.

{¶ 8} Generally, in these situations, an employee of the Board of Health returns to

---

[1] To avoid confusion, we will refer to the Shutways by their first names for the remainder of the opinion.

the premises after 48 hours. If the occupants are still there, a "condemned" notice is placed on the door, and the residents are told they must vacate. On August 8, 2013, Wellman returned to the premises and took a picture of the notice that he posted. On both August 6 and August 8, Wellman took a policeman with him. He did this because he could not get anyone to come to the door, even though he knew someone was at the premises. Wellman took a policeman to witness that the notice had been posted. If a resident fails to vacate the premises, the Health Department then files charges.

{¶ 9} On August 14, 2013, John came to a Health Department meeting to complain about the way in which the notice had been served. Wellman attempted to give John a copy of the notice at the hearing, but John refused to accept it. Between August 6 and August 21, 2013, someone from the Water Department was at the Shutway home three or four times, checking on the water line, due to suspicion that the residents were stealing water. Neighbors had complained about their water bills increasing, and on two occasions during that time, Water Department employees found that the water valve to the Shutway home had been turned back on. When the employees discovered this, they turned the water back off.

{¶ 10} On August 21, 2013, the City of Urbana took the unusual step of digging up the service line to disconnect the Shutway residence from the Water Department side of the service line. This process involved three employees of the Street Department, three Water Department employees, and two police officers.

{¶ 11} On August 26, 2013, Wellman received a call from neighbors of the Shutways, who said the Shutways were still living in the house. After going back out to the house and verifying that the Shutways' car was in the driveway, charges were filed in

municipal court on August 29, 2013.

{¶ 12} Water service to the Shutway residence was not reconnected until October 31, 2013. On October 13, 2013, Deputy Culler of the Champaign County Sheriff's Department was on road patrol. Serving warrants was part of Culler's duties, and serving an active warrant on John was part of Culler's planned duties that day. Culler had previously attempted service on this warrant, but had been unable to make contact at the residence. Officer Burkett of the Urbana City Police Department had also attempted to serve a warrant on John a few times within the prior week or two by going to the Shutway residence and knocking on the door. No one would answer, even though a car was in the driveway.

{¶ 13} At about 12:05 p.m., Culler was returning from lunch to the office via Church Street. At that time, Culler happened to see John, Jan, and what appeared to be their two children outside their residence on Church Street. Culler parked on the street and exited his vehicle. When the Shutways saw Culler, they started running toward their vehicle. Culler approached the vehicle, and asked John, who was sitting in the driver's seat, if he were John Shutway. John replied affirmatively. Jan was in the passenger's side, and the children were in the back seat.

{¶ 14} Culler explained that he was attempting to serve an active warrant for John's arrest. John told Culler that the warrant had been taken care of, but Culler assured him the warrant was active. Culler stated that if John would give him his driver's license, he would confirm through dispatch that the warrant was still active. However, John did not give Culler his driver's license. After a few more things were said, Culler advised John he was under arrest and asked him to step out of the car. John refused,

said, "Bye," and put the van in reverse. John then drove away.

{¶ 15} Culler ran after the van, telling John he was under arrest, but John kept driving. Culler then ran to his cruiser, advised dispatch that John was fleeing, and asked for assistance. After driving in the direction that he had seen the van headed, Culler spotted the van a few streets away. However, Jan was in the driver's seat, not John. After initiating a traffic stop, Culler asked Jan where John was, and she said she did not know. She also denied knowing the direction in which John had run.

{¶ 16} Because the back windows of the van were tinted, Culler asked Jan to step out so that he could see into the vehicle. At that time, he saw only Jan's daughter; both John and the couple's son, R., were missing. Culler did not handcuff Jan, nor did he tell her that she was under arrest. He talked with her for 10-15 minutes, and Officer Burkett, who arrived shortly after the stop occurred, spoke with Jan as well. Culler indicated that he had probable cause to arrest Jan, because she had switched seats in the van, and because he believed she was lying about John's whereabouts. Jan was detained at the site of the traffic stop for about a half hour, and no *Miranda* warnings were administered. During this time, Jan asked Culler if she was free to go, and he told her that she was not.

{¶ 17} Officer Burkett was on duty that day as an Urbana Police Officer, and heard the dispatch about John fleeing. At that time, officers believed John had gone back to his residence, so Burkett went there first and walked around the residence. From the outside, it did not look like anyone was there, so Burkett went to the location of the traffic stop to ascertain if there were any weapons in the house. After arriving at the location of the stop, Burkett explained to Jan that the officers had been in possession of a warrant for a period of time and that John would never answer the door. He further explained

that the police did not want to see Jan's family in harm's way. Burkett told Jan that the police felt John had gone back to the residence. He asked for consent to search, and asked Jan to come back to the house.

{¶ 18} Jan and her daughter drove back to the house in their van, and the officers followed. After they arrived, Burkett again asked for permission to search. He stressed that the consent was voluntary and that Jan did not have to let him into the house. Jan unlocked the door, walked in, and let the officers into the house. Almost immediately upon entering, Officer Burkett saw R., who was sitting on the couch playing video games. Burkett asked R. where his father was, and R. did not respond. Burkett asked the question again, and R. then said that he did not know. R. also asked if the police had a warrant.

{¶ 19} The officers asked Jan if there were weapons in the house, and she said she thought that her son had a BB gun. She went upstairs with the officers, and they searched the attic and upstairs. In a room between two bedrooms, the officers found a loaded .22 caliber rifle sitting in plain view up against a door, like someone had just left it there. While they were at the house, Culler thanked Jan for her cooperation, and told her that he might not press charges. At the time, he was not planning to charge her. However, no one made any promises to her.

{¶ 20} Detective Kemp, of the Champaign County Sheriff's Office, arrived just as the other officers were entering the house. Kemp stepped inside the front door to provide cover. He saw the basement door standing open and closed it. Kemp then went back to the front room, where he saw R. coming out of the dining room area. Kemp asked R. to step outside. When Jan came down with the other officers, Kemp asked her to call

for her husband to come out, which she did. Officers had heard noises in the basement, although they had not received responses to anything they had said to anyone in the basement. Eventually, officers went down in the basement, retrieved John without further incident, and put him in a cruiser.

{¶ 21} In the meantime, the Champaign County Sheriff, Matt Melvin, had arrived at the house, and Culler discussed with him what had transpired. After conferring with a prosecutor, Melvin told Culler to charge Jan with obstruction of official business. As was noted, charges were filed on October 15, 2013, charging Jan with obstructing official business and a repeat violation of R.C. 3707.48.

{¶ 22} After hearing the evidence, the trial court overruled the motion to dismiss and the motion to suppress, and the matter was set for trial on September 25, 2014. On that date, Jan pled no contest to an amended offense of having violated an order in violation of R.C. 3707.48, a minor misdemeanor. The charge of obstruction of official business was dismissed in exchange for the plea. After pleading no contest, Jan was sentenced to a $150 fine plus court costs, with the costs capped at $200. This appeal followed.

## II. The Perjury Issue

{¶ 23} Jan's First Assignment of Error states that:

> As a Matter of Law, the Champaign County Deputy Culler Perjured Himself by Saying He was Heading to the Sheriff's Office Driving on Church Street Past My House, Saw Me Behind My House[,] Then Backed Up His Vehicle and Parked It on the Street in Front of My House.

{¶ 24} Under this assignment of error, Jan argues that Deputy Culler testified untruthfully by stating that he was heading back to the Sheriff's Office from McDonald's when he saw the Shutway family at their home. Jan argues that, instead, there was a concerted effort of the Sheriff's Department that day to search for John.

{¶ 25} As a preliminary matter, we note that Jan pled no contest to a minor misdemeanor, which was a violation of R.C. 3707.48. In *State ex rel. Stern v. Mascio*, 75 Ohio St.3d 422, 662 N.E.2d 370 (1996), the Supreme Court of Ohio noted that:

> While a plea of guilty is a complete admission of the defendant's guilt, a plea of no contest is not an admission of guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint. Crim.R. 11(B)(1) and (2). The trial court thus possesses discretion to determine whether the facts alleged in the indictment, information, or complaint are sufficient to justify conviction of the offense charged.

(Citation omitted.) *Id.* at 423.

{¶ 26} The court went on to note in *Mascio* that: " 'The essence of the "no contest" plea, is that the accused cannot be heard in defense. Thus any statement by him must be considered as in mitigation of penalty.' " (Citations omitted.) *Id.* at 424. As a result, while "the trial court retains discretion to consider a defendant's contention that the admitted facts do not constitute the charged offense, the defendant who pleads no contest waives the right to present additional affirmative factual allegations to prove that he is not guilty of the charged offense. * * * By pleading no contest, the defendant waives his right to present an affirmative defense." (Citations omitted.) *Id.*

{¶ 27} Jan pled no contest to a violation of R.C. 3707.48, which provides that:

No person shall violate sections 3707.01 to 3707.50 or section 3707.53 of the Revised Code, or any order or regulation of the board of health of a city or general health district made in pursuance thereof, obstruct or interfere with the execution of such order, or willfully or illegally omit to obey such order.

{¶ 28} The complaint alleged that Jan had violated this statute, and further alleged that:

On or about 13 October 2013, [Jan Shutway] did violate an order of the Champaign County Health District by willfully and illegally omitting to obey said order issued by the Champaign County Health District 1008.2.3, failed to either vacate or correct said violation (i.e., shut off water). * The defendant has a prior conviction of this section.

In violation of Section 3707.48 O.R.C.—Prohibition against violation of orders or regulations of board (M-4)

Complaint B, Doc. # 3, p. 1.

{¶ 29} The no contest plea was an admission to these facts, and whether Deputy Culler came to the property that day from McDonalds, as he said, or because of an effort to locate John Shutway, is irrelevant. Furthermore, Jan's argument also relies on alleged testimony in another case, which is not part of our record. Accordingly, even if the matter were relevant, we could not consider facts from other cases.

{¶ 30} Based on the preceding discussion, the First Assignment of Error is overruled.

### III. Constructive Arrest in Excess of Jurisdiction

**{¶ 31}** Jan's Second Assignment of Error states that:

As a Matter of Law, Deputy Culler Constructively Arrested Me on Court Street Without Cause to Do So, See Transcript[,] May 1, 2014, Page 170[,] Lines 1-10, Page 194[,] Lines 1-25, Page 195[,] Lines 1-25[,] I Had Advised Her No She Couldn't (Couldn't Leave), Page 200[,] Lines 5-25, Page 201[,] Lines 1-25, Page 208[,] Lines 7-16. I Was Never Informed of My Rights (Miranda v. Arizona).

**{¶ 32}** Under this assignment of error, Jan appears to be arguing that she was improperly detained and questioned without being informed of her *Miranda* rights, and that the police officers made intimidating statements and coerced her into allowing a search of the house.

**{¶ 33}** "A plea of no contest does not waive a defendant's appeal from an adverse ruling on the motion [to suppress]." *City of Defiance v. Kretz*, 60 Ohio St.3d 1, 5, 573 N.E.2d 32 (1991). As a result, we would be able to consider the propriety of the trial court's ruling on the motion to suppress, even though Jan pled no contest. However, a review of the motion to suppress indicates that it raised issues only with respect to the statements made by Jan that led to the charge of obstruction of official business. Since that charge was dismissed, any alleged violations of Jan's constitutional rights with respect to the traffic stop and her detention are irrelevant.

**{¶ 34}** The motion to suppress also did not challenge the search of the premises or the charge of having violated R.C. 3707.48. Jan's motion to dismiss did challenge the violation of R.C. 3707.48, but the basis for this challenge was the alleged selective

prosecution of Jan, not the propriety of the search or the consent to search. Accordingly, arguments pertaining to the consent to search have been waived because they were not properly raised in the trial court. *Shutway*, 2d Dist. Champaign No. 2013-CA-55, 2015-Ohio-2432, ¶ 18 (noting that arguments not raised in the trial court are waived for purposes of appeal).

{¶ 35} In light of the preceding discussion, the Second Assignment of Error is overruled.

## IV.   Removal of Firearm

{¶ 36} Jan's Third Assignment of Error states that:

As a matter of law, Deputy Culler and Officer Burkett Exceeded Their Jurisdiction When They Seized a Firearm and Removed It from the Property.

{¶ 37} Under this assignment of error, Jan contends that the officers exceeded their jurisdiction because there was no search warrant issued for firearms, and no willing consent was given to search the house.

{¶ 38} As was noted, the issue of consent to search was not raised in the trial court. Furthermore, no charges were brought with respect to the firearm, and any arguments relating to the firearm are irrelevant to Jan's conviction. Accordingly, the Third Assignment of Error is overruled.

## V.   Alleged Monopoly for Water Service

{¶ 39} Jan's Fourth Assignment of Error states that:

As a Matter of Law, the Champaign County Health District Erred in Creating and Passing Champaign County Housing Maintenance Regulation 1008 as It Creates a Monopoly for Water Service Within the Corporation Limits of Urbana, Ohio.

{¶ 40} Under this assignment of error, Jan contends that regulation C-1000 of the Health Department is unconstitutional because it fails to allow for secondary water and sewer service, and permits condemnation of a home for a minor violation of an ordinance without requiring inspection or confirmation of a public health nuisance.

{¶ 41} After reviewing the record, we conclude that this matter has been waived because it was not raised in the trial court.   In a pro se motion to dismiss filed on October 23, 2013, before counsel was appointed, Jan alleged that the basis of the case was an "Infirm order of presumption that the home of the defendants is without potable water," and that the Health Department Technician had failed to properly inspect her home for conditions that were "unsanitary or unfit for human habitation."   Motion to Dismiss, Doc. #15, pp. 1-2.   By pleading no contest to the charges in the complaint, Jan admitted the facts in the complaint, i.e., that she willfully and illegally failed to obey an order of the Health Department by failing to either vacate or to correct the violation.   Thus, Jan can no longer challenge the facts in the complaint, nor can she raise an affirmative defense. *Mascio*, 75 Ohio St.3d at 423-424, 662 N.E.2d 370.

{¶ 42} More importantly, however, Jan's motion to dismiss did not allege that the Health Department regulation created a monopoly, was unconstitutional, or was unreasonable.   In fact, Jan's motion to dismiss did not even mention the Health Department regulation or its content.   The motion to dismiss her counsel subsequently

filed also did not challenge the Health Department regulation; it simply argued that Jan was the subject of selective prosecution due to her political beliefs in violation of the First Amendment.   *See* Motion to Dismiss, Doc. # 42, p. 2.

{¶ 43} In *State v. Desbiens*, 2d Dist. Montgomery No. 22489, 2008-Ohio-3375, we noted that "[t]he '[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.' "   *Id.* at ¶ 17, quoting *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus.   As a result, we need not consider this assignment of error.

{¶ 44} In *Desbiens*, we also observed that we have discretion to consider constitutional arguments on a plain error basis, pursuant to *In re M.D.*, 38 Ohio St.3d 149, 151, 527 N.E.2d 286 (1988).   (Other citation omitted.)   *Id.*   We noted that "[a]n error qualifies as 'plain error' only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise." (Citations omitted.)   *Id.*   The Supreme Court of Ohio has additionally stressed that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."   *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, (1978).

{¶ 45} We find no such circumstances in the case before us.   In a prior case, Jan challenged the Health Department regulation as an unconstitutional bill of attainder because it permitted "the health inspector to condemn an individual's private residence without first inspecting the home and finding that the home is 'unfit for human habitation.' "

*Shutway*, 2d Dist. Champaign No. 2013-CA-55, 2015-Ohio-2432, at ¶ 26. This is similar to the argument being made in the case before us. We rejected that argument, concluding, first, that it was without merit because Jan was "afforded the protection of a trial prior to the imposition of a punishment." *Id.* at ¶ 29-30. We then stated that:

> Additionally, it was unnecessary for Wellman to enter Shutway's home for inspection because he was able to identify from extrinsic conditions that Housing Maintenance Regulation 1008.3 had been violated because the potable water service had been disconnected based on appellant's failure to pay her outstanding water bill. HMR 1008.3 specifies that condemnation can occur when any utility is disconnected "for non-emergency or non-repair purposes." In order to avoid criminal liability, Shutway could have vacated the condemned premises, paid the outstanding bill to have the water service reconnected, or provided the Health District with notice that she had secured another potable water supply. Shutway, however, ignored the notice and continued to live in the house with her husband and child. By violating the condemnation order, Shutway became subject to imposition of a minor misdemeanor penalty under R.C. 3707.48.

*Id.* at ¶ 31.

{¶ 46} Since this is Jan's second conviction for the same offense, she had more than ample opportunity to raise her alleged constitutional arguments at the trial and appellate levels, and there is no reason to apply the plain error doctrine. Accordingly, the Fourth Assignment of Error is overruled.

## VI.   Notice by Urbana City Schools

**{¶ 47}** Jan's Fifth Assignment of Error states that:

As a Matter of Law, the Urbana City Schools Failed in Sending Notification as Required in R.C. 3321.19(C) nor [Did They] Give Notice as Required in Writing, per R.C. 3321.21.

**{¶ 48}** Under this assignment of error, Jan contends that the Urbana City Schools failed to provide proper notice regarding home education requirements.   We decline to consider this assignment of error, as it relates to matters that are not involved in the current appeal.   Instead, this assignment of error involves cases that Jan has designated as "T.C. 13JD81, 82."

**{¶ 49}** Based on the preceding discussion, the Fifth Assignment of Error is overruled.


## VII.   Conclusion

**{¶ 50}** All of Shutway's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


DONOVAN, P.J. and FROELICH, J., concur.

Copies mailed to:

Breanne Parcels
Jan E. Shutway
Hon. Teresa L. Liston, Retired, Sitting by Assignment (c/o Hon. Gil S. Weithman)